IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PACIFICORP, an Oregon
corporation,

                Plaintiff,

                                                3:10-cv-00099-PK

                                                OPINION AND ORDER

NORTHWEST PIPELINE GP, a
Delaware Partnership, and GAS
TRANSMISSION NORTHWEST
CORPORATION, a California
corporation,

                Defendants.

_____

PAPAK, Judge:

      Plaintiff PacifiCorp brings this action against defendants Northwest Pipeline GP

("NWP") and Gas Transmission Northwest Corporation ("GTN") arising out of the alleged

contamination of natural gas causing damage to PacifiCorp's Hermiston power plant. Now

before the court are defendants' joint motions to extend deadlines for expert disclosure (#143)

and to compel discovery (#144). For the reasons discussed below, the motions are granted in

Page 1 - OPINION AND ORDER

part and denied in part.

Fact discovery in this case concluded on August 31, 2011, although the parties agreed to conduct the 30(b)(6) deposition of PacifiCorp and several other depositions several weeks after the end of discovery. Plaintiff's initial expert disclosures were due October 7, 2011, defendants' own expert disclosures were due October 28, 2011, and rebuttal expert reports were due on November 10, 2011. On October 7, 2011, PacifiCorp served defendants with four expert reports: the Exponent report, the Peters report, the Choquette report, and the Asante report. A week later, defendants filed the current motions. Defendants generally argue that PacifiCorp's expert reports reveal a number of discovery abuses that will necessitate an extension of expert discovery deadlines, as well as further discovery, 30(b)(6) depositions, and spoliation motions by defendants. As discussed more fully below, I grant an extension of 75 days for disclosure of rebuttal expert reports, order production of several documents relied upon by PacifiCorp's experts, and provide defendants the opportunity to conduct some other limited discovery within the next 30 days.

## I.    Exponent Report

Defendants argue that they require an extension of time and further discovery to adequately respond to PacifiCorp's Exponent expert report. I agree, but only to a limited extent. First, defendants seek additional time to respond to the Exponent report. PacifiCorp produced 3,500 pages of new discovery on October 27, 2011– the day before defendants' rebuttal expert reports were originally due– apparently containing documents that Exponent relied upon in its report. This large and untimely production constitutes an extraordinary circumstance requiring a further extension of discovery. In order for defendants to meaningfully rebut the Exponent

Page 2 - OPINION AND ORDER

report, I grant defendants an additional 75 days to adequately review this new material.

Second, defendants request more specificity in the list of documents relied upon by the Exponent report. The Exponent report includes an Appendix A listing all the documents PacifiCorp provided to Exponent, identified by title, date, and author. Defendants note, however, that because Appendix A fails to identify the documents by Bates number, defendants cannot readily ascertain whether those documents have actually been produced. Consequently, I order PacifiCorp to create and exchange an amended Appendix A to its Exponent report including Bates numbers for all documents reviewed by Exponent.

Third, defendants contend that PacifiCorp still has not produced two documents upon which the Exponent report relies: the Anamet, Inc. report and the Black and Veatch report. Indeed, the Exponent Report apparently relies on material analysis testing performed by Anamet, Inc. (Exponent Report, at 21 n. 5.)[1] Therefore, I order PacifiCorp to produce results of the Anamet, Inc. testing.   Concerning the second document, the author of the Exponent report, Dr. Abid Kemal, has declared that although he reviewed the Black and Vetch report, he did not rely on it or consider it relevant to his opinions in the Exponent report. (Kemal Decl., #157, ¶2.) Dr. Kemal therefore planned to prepare an amended Appendix removing the Black and Vetch report and reflecting only those documents he actually relied upon or considered relevant to the opinions he expressed. *Id.* However, as one court in this district explained, "Federal Rule of Civil Procedure 26(a)(2)(B)(ii) requires disclosure of all 'data or other information,' including attorney work product, 'considered by' a testifying expert 'in forming' the opinions to be

_____

[1] Although the Exponent Report does not appear in the record, the parties informally provided it for review at the court's request.

presented at trial, regardless of whether the expert 'relied' on such information." *Huggins v.*
*Stryker Corp.*, Civ. No. 07-1671-AA, Dkt.#254, at 4-5 (Oct. 16, 2009); *see* Fed. R. Civ. P.
26(a)(2)(B)(ii) (testifying expert's report must contain "the facts or data considered by the
witness in forming [his opinions]").  Accordingly, even though Dr. Kemal did not rely on the
Black and Vetch report, PacifiCorp still must produce it because Dr. Kemal considered it among
other documents in his review. *See Huggins,* 07-1671-AA, Dkt. #254, at 7 ("the scope of expert
discovery . . . extends to all documents and other information written, prepared, reviewed, or
considered by an expert witness that pertain to the subject matter on which the expert intends to
testify.")

## II.    Peters Report

Defendants also seek an extension of time and additional discovery to respond to the
expert report of Lon Peters, Ph.D., PacifiCorp's damages expert.   Subsequent to the filing of the
pending motions, PacifiCorp apparently produced a detailed spreadsheet comprising its damages
calculations and a significant amount of additional discovery relied upon by Mr. Peters.  This
production apparently satisfies defendants' request for further discovery.  If upon review of the
recently discovered materials, defendants determine that PacifiCorp did not produce other
documents relied upon by Mr. Peters, they may renew their motion to compel and seek
production of those specific documents.  The untimely nature of this discovery also warrants
extending the deadline for rebuttal expert disclosures by 75 days.

## III.   Pigging

Defendants seek additional discovery from the pigging operators and contractors that
pigged the Cascade pipeline in late 2007.  Although defendants ostensibly argue that this

Page 4 - OPINION AND ORDER

additional discovery is needed to rebut certain opinions concerning pigging contained in the

Choquette and Asante expert reports, in effect, it is actually an improper attempt to re-open fact

discovery concerning pigging. Defendants nearly admit as much, acknowledging that the

requested discovery is necessary in part to find additional evidence "addressing" the testimony of

PacifiCorp's 30(b)(6) designee Shane Holst that the pigs run through the Cascade line were too

small. Defendants may seek to depose either of PacifiCorp's pigging experts regarding the

opinions in their reports. *See* Fed. R. Civ. P. 26(b)(4)(A) ("A party may depose any person who

has been identified as an expert whose opinions may be presented at trial."). They may not,

however, reopen fact discovery merely because an expert voiced an opinion which they wish to

rebut.

## IV.    Discovery Regarding Damaged Parts

Defendants also seek to compel PacifiCorp to provide the type, serial number, condition,

physical location, current custodian, and brief description of any testing conducted for each

damaged turbine component it possesses. Defendants contend that PacifiCorp has failed to

identify and provide these specific details about each item of property allegedly damaged, as

requested by GTN's RFP No. 9[2], GTN's Interrogatory No. 8[3], and NWP's Interrogatory No. 3[4].

---

[2] "All Documents exchanged between or documents reflecting communications of any kind between You/HGC/Hermiston Plan and GE/You/HGC/Germiston Plant and Cascade, You/HGC/Hermiston Plant, and GTN, You/HGC/Germiston Plan and Northwest, or You/HGC/Germiston Plant and FER related to gas quality, the damage allegedly sustained by the GE Turbins in 2007, and related outages."

[3] "For each type of damage You contend was caused by GTN, identify the specific amount of such damaged and how you contend GTN caused the damage."

[4] "Identify each item of property that allegedly was damaged by the alleged presence of oil in the gas at the Hermiston Station, including without limitation, the dollar amount of damage

Page 5 - OPINION AND ORDER

PacifiCorp, by contrast, contends that it has responded to defendants requests for production by providing a nearly 700-page binder of records. The binder apparently includes work orders, purchase orders, photographs, labor invoices, parts invoices, General Electric reports, photographs, and other documents relating to the damaged property, organized by outage with subcategories related to onsite labor, shop labor, and parts charges. (Sagalewicz Decl., #156, ¶7.) PacifiCorp also notes that it answered defendants' interrogatories by directing defendants to those same business records from which defendants may derive the desired answer, as is permitted under Fed. R. Civ. P. 33(d). PacifiCorp also partially responded to defendants requests by providing a list of turbine parts that PacifiCorp's expert Exponent currently possesses. (Skeleton Decl., #162, Ex. C). Defendants, however, view these productions as insufficient because they do not "specifically identify any damaged parts" and do not amount to "a reconciliation of which specific parts exist and where, which have been refurbished, and which have been destroyed." (Defs.' Reply Br., #160, at 3 n.5, 4.)

As an initial matter, I agree with PacifiCorp that the relief sought in defendants' motion to compel information about the turbine parts PacifiCorp possesses exceeds the scope of their original requests for production and interrogatories. In particular, although the RFPs or Interrogatories cited by defendants can be read to request identifying information about damaged parts such as the type of part, serial number, and the part's condition, none of the discovery requests seeks information concerning treatment of the parts after they were replaced or repaired, such as the current physical location of the parts, the current custodian, and information

---

to each item, the original cost of each item damaged, the book value of each item damaged, the replacement cost or cost to repair each item damaged, the date each item sustained damage, and the date each item was replaced and/or repaired."

concerning testing conducted on those components.

PacifiCorp nevertheless asserts that even if defendants had properly requested this information during fact discovery, the court should not compel production of it now because PacifiCorp already made it available to defendants in the binder of business records it previously produced pursuant to Fed. R. Civ. P. 33(d).  Rule 33(d) provides an alternative method for a party to respond to an interrogatory when the answer may be derived from the business records of the responding party:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d).  The Advisory Committee notes to Rule 33(d) make clear that a party permitted to offer records in lieu of answering an interrogatory must "offer them in a manner that permits the same direct and economical access that is available to the party." (Notes of Advisory Committee on 1980 Amendment to Rule 33(c) (renumbered Rule 33(d) in 1993)).  Case law suggests that Rule 33(d) does not permit the responding party to create an unequal burden for the receiving party, for example, by declining to supply an already-existing compilation that answers the interrogatories or by producing a mass of records that can only be deciphered by the responder. *See Sadofsky v. Fiesta Products, LLC*, 252 F.R.D. 143, 148 (E.D.N.Y. 2008) (collecting cases).  Nevertheless, "the rationale behind Rule 33(d) is to shift the burden of

compiling the information and, accordingly, ascertaining the answer, from the producing party to the interrogating party." *Id.* Thus, where one of the parties must undertake the task of compiling the information and the records presented are not voluminous or indecipherable, "the interrogating party should bear the responsibility of compiling the information." *Id.* at 149.

Here, defendants fail to demonstrate why PacifiCorp's interrogatory responses are improper. Because the parties did not provide a copy of the binder at issue, I cannot know with certainty how burdensome it would be to derive the information defendants seek. However, based on declarations and deposition testimony, it appears that PacifiCorp has not placed an unequal burden on defendants. Although the binder apparently contains nearly 700 pages of records, it is said to be well-organized. Moreover, PacifiCorp does not appear to have already made a concise compilation of the information defendants desires, other than the binder itself. Indeed, when the creator of the binder, Frank Glasgow, was asked which specific components were damaged, he responded: "Fuel nozzles, liners, TPs. It's really in those inspection books that I have there and it basically lays out all the repairs that we have had to make after we had an event." (Sagelewicz Decl., #156, Ex. 3 at 4.) Finally, defendants briefing provides no indication that they have even attempted to locate the information they seek in the 700-page binder, let alone been prevented from doing so because they find those records indecipherable. In sum, PacifiCorp need not produce a concise accounting of the type, serial number, condition, physical location, current custodian, and testing conducted for each damaged turbine part it possesses because that request exceeds the scope of its original RFPs and interrogatories and because PacifiCorp has already provided that information in a manner permitted by Rule 33(d).

**V.     Extension of Time to Inspect Damaged Parts**

Page 8 - OPINION AND ORDER

Defendants also seek additional time to inspect the various damaged turbine components as well as the Hermiston plant itself. Defendants informally requested to inspect various damaged parts on August 12, 2011. On September 9, 2011, PacifiCorp agreed to make the parts available for inspection at a time convenient for the parties and under an agreed-upon protocol. On September 29, 2011, defendants responded, requesting PacifiCorp identify the type, serial number, condition, physical location, current custodian, and description of testing conducted for each component in its possession. Defendants asserted that this information was necessary to determine what type of inspection would be necessary and what type of protocol would be appropriate. On October 14, 2011, PacifiCorp indicating that its expert Exponent had all of the turbine components PacifiCorp had retained, identified those components by type and ID number, and asked defendants for dates they were available for an inspection. Defendants have not yet provided dates they are available. Moreover, defendants insist that they cannot schedule an inspection until they have a "reconciliation of which specific parts exist and where, which have been refurbished, and which have been destroyed." (Defs.' Reply Br., #160, at 4.) The information they seek, however, is available. As described above, the 700-page binder contains information about which parts have been refurbished for reuse or destroyed, and PacifiCorp has already listed all the parts it retained. Accordingly, defendants insistence on delaying the inspection until PacifiCorp provides a more convenient inventory of turbine components is not justified. Although defendants' rationale for delaying the inspection is ultimately unpersuasive, it is at least colorable. Therefore, I do not find that defendants have waived their right to conduct an inspection of the turbine components by waiting until this court ruled on the instant motions. Instead, if defendants wish to inspect the turbine parts, they must arrange to do so within 30 days.

VI.    **Additional 30(b)(6) Depositions**

Defendants also argue that PacifiCorp should be required to present two additional 30(b)(6) deponents on topics that Shane Holst, PacifiCorp's lone 30(b)(6) deponent, was unprepared to discuss during the late-September deposition.    Both parties seem to agree that this aspect of defendants' motion is completely unrelated to expert reports and expert discovery deadlines, the subjects of the remainder of the current motions.    Nevertheless, even though the discovery deadline has passed, defendants may still seek to compel further 30(b)(6) depositions because the original 30(b)(6) deposition was noticed and scheduled to occur before the discovery cut-off, but was postponed because of the deponent's inability to appear. *See Jorgensen v. Cassiday*, 320 F.3d 906, 913 (9th Cir. 2003) (holding that district court properly considered motion to compel filed after the deadline for discovery motions because motion concerned a discovery request submitted four months before the deadline and answered more than two months after the deadline).

The crucial issue, then, is whether PacifiCorp satisfied its obligations under Rule 30(b)(6) by designating Shane Holst alone.  According to Rule 30(b)(6), a party "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6).  Thereafter, the deponent must designate one or more individuals to testify on its behalf. *Id.*  "[T]he persons designated must testify about information known or reasonably available to the organization." *Id.*

Defendants first contend that PacifiCorp's in-house counsel Jeff Erb should now be deposed.  Defendants argue that Holst could not answer a number of questions about the Federal

Energy Regulatory Commission (FERC) proceedings noticed as GTN's Topic No. 3[5], including the details of the gas testing conducted by FERC in late 2008 and 2009, but indicated that Mr. Erb could. PacifiCorp does not dispute that Holst could not answer questions pertinent to Topic No. 3, but argues instead that the FERC sampling is irrelevant because it occurred outside of the 2006-2007 time period at issue in this case. I disagree. FERC results showing no oil existed in the gas supply in late 2008 and FERC's suggestion that PacifiCorp's gas testing protocols were defective are at least minimally relevant to the claims at issue. (Walker Decl., #146, Ex. 12, 13.) Accordingly, PacifiCorp must either re-designate a witness knowledgeable about Topic No. 3 such as Mr. Erb or prepare Mr. Holst adequately to complete the 30(b)(6) deposition. *See Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989) ("Among the other remedies, the Court can require the corporation to re-designate its witnesses and mandate their preparation for re-deposition at the corporation's expense."). This deposition must be completed within 30 days.

Second, defendants seek to depose David Lucas, who oversees four other PacifiCorp facilities with gas turbines. Defendants contend that Holst was unable to testify about the extent of gas contamination at those other PacifiCorp plants and such information is necessary to rebut opinions contained in the report of PacifiCorp's expert Gary Choquette. The disputed testimony relates to GTN's Topic No. 24, which concerns: "Gas conditioning equipment and other steps related to fuel supply taken by PACIFICORP to protect the gas turbine equipment at the other

---

[5] Topic No. 3 in GTN's 30(b)(6) deposition notice provides: "Facts related to the gas quality proceeding initiated with FERC by GERMISTON or PACIFICORP, including but not limited to the position(s) taken by GERMISTON or PACIFICORP, communications related to the FERC proceedings, any materials submitted to FERC, and any testing or analysis performed in conjunction with the FERC proceeding."

plants and facilities owned or operated by it, including but not limited to the Currant Creek facility and facility in Minnesota." (Order, #139, at 9.) As this court previously recognized, Topic 24 "formalizes GTN's request to inquire regarding PacifiCorp's installation of gas heaters and filters at some of its facilities." *Id.* During the deposition, Holst provided detailed information regarding the gas conditioning equipment installed at several other plants operated by PacifiCorp. (Sagalewicz Decl., #156, Ex. 6 at 3-10.) He could not, however, answer questions about who paid for the gas conditioning equipment, whether there had been oil contamination at those facilities, and whether any claims for damages arose from those facilities, suggesting instead that David Lucas could provide such information. Nevertheless, these purported deficiencies in Holst's testimony concern information well outside the scope of Topic 24. Therefore, PacifiCorp satisfied its obligation to designate a deponent with knowledge of the matter designated. If they wish, defendants may seek to depose PacifiCorp's expert Mr. Choquette concerning his own conclusions, but they cannot retroactively expand the scope of a 30(b)(6) deposition topic in order to gather information to challenge Mr. Choquette's report.

## VII.    Spoliation

Finally, defendants seek an extension of time and permission to perform additional discovery concerning PacifiCorp and Hermiston Generating Company's alleged destruction of evidence, as well as a briefing schedule for future spoliation and evidentiary exclusion motions. Defendants' moving papers make clear that they already have conducted a great deal of discovery regarding spoliation, including discovery about PacifiCorp's alleged failure to preserve oil and gas samples and alleged destruction or loss of damaged turbine components and fuel gas scrubbers. Defendants now seek "complete discovery" on spoliation and wish to obtain

"definitive answers from Plaintiff" regarding various pieces of allegedly destroyed evidence. (Defs. Br., #145, at 20.)  Defendants, however, neglect to explain what particular evidence they seek through a reopening of discovery and why they were prevented from gathering that information earlier.  Further, the only specific information defendants mention, "the location and condition of [damaged] components that may still exist," is already available to them in the form of the 700-page binder of maintenance records, as discussed above.  Accordingly, defendants have not adequately demonstrated the need for reopening of fact discovery on spoliation.  Although there is no need to establish a briefing schedule for spoliation motions now, since no such motions have been filed, the court will address any spoliation arguments as they are presented by motion and set appropriate schedules for briefing.  Spoliation issue may also be presented either along with dispositive motions or as part of motions in limine that will be filed after preparation of a pretrial order.

## CONCLUSION

Defendants' motions to extend deadlines for expert disclosure (#143) and to compel discovery (#144) are granted in part and denied in part as follows:

- Defendants' initial expert disclosures are due immediately.

- Rebuttal expert reports must be exchanged within 75 days.

- If defendants wish to inspect the turbine parts held by Exponent, they must arrange to do so within 30 days.

- PacifiCorp must either re-designate a witness knowledgeable about GTN Topic No. 3 such as Mr. Erb or prepare Mr. Holst to adequately to complete the 30(b)(6) deposition and make its designee available for deposition within 30 days.

- PacifiCorp must exchange an amended Appendix A to its Exponent report including Bates numbers for all documents reviewed by Exponent and do so within 21 days.

- PacifiCorp must produce the results of the Anamet, Inc. testing mentioned in the Exponent report immediately.

- PacifiCorp must produce the Black and Vetch report reviewed by Dr. Kemal in preparation of the Exponent report immediately.


IT IS SO ORDERED.

Dated this _9th_ day of November, 2011 .

Honorable Paul Papak
United States Magistrate Judge

Page 14 - OPINION AND ORDER