IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PACIFICORP, an Oregon
corporation,

           Plaintiff,

                                   3:10-cv-00099-PK

                                   OPINION AND ORDER

NORTHWEST PIPELINE GP, a
Delaware Partnership, and GAS
TRANSMISSION NORTHWEST
CORPORATION, a California
corporation,

           Defendants.

---

PAPAK, Judge:

      Plaintiff PacifiCorp brings this action against defendants Northwest Pipeline GP

("NWP") and Gas Transmission Northwest Corporation ("GTN") arising out of the alleged

contamination of natural gas causing damage to PacifiCorp's Hermiston power plant. Before the

court is defendants' joint motion to compel (#180) discovery related to PacifiCorp's experts and

defendant NWP's motion to compel (#189) production of a report created in 2008 by

Page 1 - OPINION AND ORDER

PacifiCorp's expert Exponent.[1]  For the reasons stated below, defendants' joint motion to compel

(#180) is granted in part and denied in part and NWP's motion to compel the 2008 Exponent

report (#189) is granted.

## LEGAL STANDARD

Federal Civil Procedure Rule 26(b)(1) provides that "[p]arties may obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense – including the

existence, description, nature, custody, condition, and location of any documents or other

tangible things and the identity and location of persons who know of any discoverable matter."

Fed. R. Civ. P. 26(b)(1).  The Rule specifies that "[r]elevant information need not be admissible

at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible

evidence." *Id.*   Rule 26 provides that "[f]or good cause, the court may order discovery of any

matter relevant to the subject matter involved in the action."  Fed. R. Civ. P. 26(b)(1).

## I.     DEFENDANT'S JOINT MOTION TO COMPEL

Defendants seek to compel three different categories of documents, which I separately

analyze below.

### A.     Communications Between PacifiCorp and "Experts"

First, defendants seek 55 separate communications listed in PacifiCorp's privilege log

between unnamed experts and PacifiCorp or employees of the Hermiston plant, additional

documents referenced in Exponent's expert report, and evidence logs, emails, and destructive

testing analyses prepared by Exponent that defendants became aware of during their in-person

---

[1] This court construed NWP's motion to file a reply and supplement to its original motion to compel as a new motion to compel concerning the 2008 Exponent report.  (Minute Order, #192.)

inspection of parts at Exponent's offices. PacifiCorp argues that these documents are protected by the work product doctrine. *See* Fed. R. Civ. P. Rule 26(b)(3) (party need not generally produce work product– "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative. . ."). For simplicity, I break these requests into three analytically distinct subcategories and provide general guidance to the parties concerning the discoverability of documents in each subcategory.

### 1. Documents Given to Testifying Experts

The work product doctrine generally protects communications between a party's attorney and a testifying expert. Fed. R. Civ. P. 26(b)(4)(C). A party is nevertheless obligated to produce any communications between an attorney and a testifying expert witness to the extent they: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed. Fed. R. Civ. P. 26(b)(4)(C). PacifiCorp has stated that it has already turned over all documents within the scope of these exceptions. Defendants, for their part, have not specifically identified any of the 55 documents that fit within these exceptions, except to argue generally that "the withheld documents were largely authored by PacifiCorp or Hermiston Plant employees and constitute 'the facts or data' that the expert considered." (Defs' Br., #182, at 10.) If at a later point defendants can identify a particular document that meets the Rule 26(b)(4)(C) exceptions and that has been withheld by PacifiCorp, sanctions may be considered. Currently, however, I have no choice but to accept PacifiCorp's representation that all such discovery has been produced.

2.    **Documents Created by Exponent in the Process of Destructive Testing**

Additionally, defendants seek discovery of all documents and communications that

Exponent created during its destructive testing of the damaged parts from the Hermiston plant.

The 2010 Advisory Committee Notes clearly state:

> Rules 26(b)(4)(B) and (C) do not impede discovery about the opinions to be offered by
> the expert or the development, foundation, or basis of those opinions. For example, the
> expert's testing of material involved in litigation, and *notes of any such testing*, would not
> be exempted from discovery by this rule.

Fed. R. Civ. P. 26 Advisory Committee Notes on Rules– 2010 Amendment (emphasis added).

Following this clarification from the Advisory Committee, to the extent that Exponent created

any notes, logs, or other writings concerning testing it performed, those materials are not

exempted from discovery and must be produced, whether or not they are listed among the 55

items identified by defendants on the privilege log.

3.    **Communications Between PacifiCorp and Non-Testifying Experts**

Defendants also apparently seek discovery of documents and communications received by

PacifiCorp's non-testifying experts.   Defendants generally contend that because these documents

and communications were created years before this litigation began and were between non-

testifying experts and PacifiCorp plant employees (not PacifiCorp's counsel), work product

protection under Fed. R. Civ. P. 26(b)(3)(A) does not apply.  PacifiCorp argues that the

documents or communications at issue were initiated in anticipation of litigation, after

PacifiCorp hired outside counsel, and at the behest of PacifiCorp counsel.

A document is created in anticipation of litigation if, "'in light of the nature of the

document and the factual situation in the particular case, the document can be fairly said to have

been prepared or obtained because of the prospect of litigation.'" *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004) (quoting 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2024 (2d ed.1994)). Moreover, "the [work product] doctrine protect material prepared by *agents* for the attorney as well as those prepared by the attorney himself." *United States v. Nobles*, 422 U.S. 225, 238-39 (1975) (emphasis added). Without performing an exhaustive *in camera* review, it is impossible to determine the precise nature of each document. Nevertheless, I can provide some guidance for the parties regarding this requested discovery. Since PacifiCorp hired outside counsel on August 2, 2007, it is likely that communications between PacifiCorp employees and non-testifying experts after that date were initiated because of anticipated litigation, and thus, satisfy the first requirement for work product protection. Moreover, to the extent PacifiCorp's counsel-- whether corporate or outside-- requested PacifiCorp employees to communicate with non-testifying experts, the second requirement for work product protection is satisfied.

For any such documents to which work product protection applies, defendants are only entitled to "facts known or opinions held" by a non-testifying expert where there are "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D). As described in oral argument, however, defendants' request actually encompasses two very different types of information: (1) first-hand data or observations that Hermiston plant employees gathered contemporaneous with the outages that the employees then passed on to non-testifying experts; and (2) opinions later generated by the non-testifying experts based in part on the factual input from plant workers. Despite Rule 26(b)(4)(D)'s reference to "facts known" by a non-testifying expert, Rule

26(b)(4)(D) must not confer work product protection on information of the first type described above, merely because it later comes into the hands of a non-testifying expert.  If it had that effect, Rule 26(b)(4)(D) would provide an irresistible mechanism for suppressing discovery of crucial information memorialized contemporaneous with a disputed incident– simply provide that contemporaneous information to a consulting expert to protect it from discovery.   Rather, PacifiCorp must produce any observations or data gathered by Hermiston plant employees contemporaneous with the disputed outages, whether or not such information was provided to a non-testifying expert.  To the extent any documents contain both first-hand observations of Hermiston plan employees intermixed with opinions generated later by a non-testifying expert based on these inputs, PacifiCorp may redact its productions to protect this latter category of information.

By contrast, Rule 26(b)(4)(D) clearly protects the second type of information.  And, defendants have not met their burden to demonstrate the existence of any exceptional circumstances requiring disclosure of the non-testifying expert's own impressions or conclusions, especially because defendants do not suggest that these non-testifying experts performed first-hand examination or testing at the plant contemporaneous with the outages at issue.  *See Comm'r of Dep't of Planning & Natural Res. v. Century Aluminum Co.*, No. 05–62, 2012 WL 314000, at *2 (D. Virgin Islands Feb. 1, 2012) ("'exceptional circumstances' exist if one party's experts had the exclusive opportunity to observe or test a particular condition or object at a point in time critical to the litigation, such as immediately after an environmental disaster or the collapse of a man-made structure.")  In other words, defendants have not explained why their own experts could not generate similar opinions once provided with the raw data and observations of the

Hermiston plant employees. Accordingly, to the extent defendants seek reports of non-testifying experts containing the opinion of those experts, defendants' are not entitled to such information.

**B.    14 Categories of Other Documents**

Second, defendants seek 14 categories of documents requested by defendant NWP as described in two letters from counsel (Exs. F and K), including plant drawings, "Pi" data on plant operations, information concerning the function of gas scrubbers, and testing data from Test America and Anament. Although neither party goes through this list category by category in briefing, it seems that defendants' requests have mostly been mooted by PacifiCorp productions in response to the motion to compel.

The only remaining area of contention pertaining to these 14 categories that the parties focused on at oral argument was PacifiCorp's alleged resistance to produce any more plant drawings or original construction drawings beyond two poor-quality renderings. PacifiCorp represented during oral argument that it has produced drawings of the gas turbines and gas lines leading to them; it argues that any other drawings are irrelevant. To the extent that PacifiCorp has not yet produced any other existing original construction drawings or mechanical drawings that include the gas turbines at issue and the gas lines leading to them, PacifiCorp must produce these now. Defendants, however, are not entitled to all original drawings of the entire Hermiston plant, as they request in their brief.

**C.    FERC Documents**

Third, defendants seek a full set of documents that PacifiCorp provided to FERC, most notably three documents that were apparently withheld under the work product doctrine identified on the privilege log as #321, #417, and #99. PacifiCorp contends that these documents

qualify for work-product protection because they include a draft expert report protected under

FRCP 26(b)(4)(B), emails in which PacifiCorp employees gathered information at the request of

attorneys, or emails informing plant employees of the scope of an expert's retention to help them

cooperate with the expert. (P.'s Br., #186, at 11.) I address the document identified as privilege

log entry #99 later in the context of NWP's motion to compel that report.

After an *in camera* review of privilege log entries #321 and #417, I find that the work

product protection applies to those documents. Moreover, PacifiCorp did not waive that

protection by disclosing those documents to FERC with "Confidential" markings. *See*

*Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991)

("Because the work-product doctrine serves instead to protect an attorney's work product from

falling into the hands of an adversary, a disclosure to a third party does not necessarily waive the

protection of the work-product doctrine.   Most courts hold that to waive the protection of the

work-product doctrine, the disclosure must enable an adversary to gain access to the

information."); *Bickler v. Senior Lifestyle Corp.*, 266 F.R.D. 379, 383 (D. Ariz. 2010) ("The

majority view among federal cases, however, is that the disclosure of work product to a

government agency does not constitute a waiver") (defendant assistant living facility's disclosure

of investigative materials to DHS did not waive work product protection because it did not

substantially increase the likelihood of that material's disclosure to plaintiffs and because DHS

had statutory authority to license, investigate, and discipline defendant).   Finally, those

documents do not contain facts or observations of Hermiston plant employees gathered

contemporaneous with the outages that would be discoverable.   Defendants' therefore are not

entitled to production of PacifiCorp's privilege log entries #321 and #417.

II.     PNW'S MOTION TO COMPEL 2008 EXPONENT REPORT

Defendant NWP moves for production of the 2008 Exponent report, which PacifiCorp characterizes as an earlier "draft" of Dr. Kemal's 2011 expert report that is protected work product under Rule 26(b)(4)(B).  Since its amendment in 2010, Fed. R. Civ. P. 26 (b)(4)(B) provides that the work product doctrine "protect[s] drafts of any report or disclosure required under Rule 26(a)(2) [expert reports], regardless of the form in which the draft is recorded." *Id.* No case explicitly defines the nature of "draft" expert report, although courts infer from Advisory Committee comments that the purpose of the recent changes to Rule 26(b)(4) is to protect the mental impressions and legal theories of a party's attorney, not its expert. *See Republic of Ecuador v. Bjorkman*, No. 11–cv–01470–WYD–MEH, 2012 WL 12755, at *6 (D. Colo. Jan. 4, 2012).

After an *in camera* review of both the 2008 Exponent report and the 2011 Exponent expert report, I find that the 2008 report cannot be considered a draft of the later 2011 expert report, even though it entitled a "draft" report.  First, the authorship of the two reports differs. Dr. Kemal is only one of several authors listed on the 2008 report, while he is the sole author of the 2011 report.  More importantly, though, the substance of the experts' conclusions changes substantially between the 2008 and 2011 reports.  Although much of the language in the 2008 report is replicated in the 2011 expert report, the 2008 report includes large sections discussing several causes of the Unit 2 failures that do not appear at all in the 2011 report.[2]  Accordingly, the 2011 report cannot be viewed merely as a refinement or revision of an earlier 2008 draft.

---

[2]  I decline to expand more on the difference between the two reports' conclusions because those reports were filed under seal for my *in camera* review.

Because the 2008 Exponent report is not a "draft" expert report protected under Rule

26(b)(4)(B), PacifiCorp must produce it.

## CONCLUSION

Defendants' joint motion to compel (#180) is granted in part and denied in part as

described herein, and NWP's motion to compel the 2008 Exponent report (#189) is granted.


IT IS SO ORDERED.

Dated this _27th_ day of February, 2012.

_Paul Papak_

Honorable Paul Papak
United States Magistrate Judge