IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PACIFICORP, an Oregon
corporation,

        Plaintiff,

                                      3:10-cv-00099-PK

                                      OPINION AND ORDER

NORTHWEST PIPELINE GP, a
Delaware Partnership, and GAS
TRANSMISSION NORTHWEST
CORPORATION, a California
corporation,

        Defendants.

---

PAPAK, Judge:

Plaintiff Pacificorp brought this action alleging state law claims for negligence, negligence/res ipsa loquitor, trespass, and nuisance against Northwest Pipeline ("Northwest") and negligence /res ipsa loquitor and breach of contract against Gas Transmission Northwest ("GTN"), arising from shut-downs of the natural gas power generation plant in Hermiston, Oregon purportedly caused by compressor oil in the gas supply that contaminated the generator turbines. Previously this court granted a motion for summary judgment eliminating Northwest as a defendant in the case, leaving GTN as the only remaining defendant. (#361.) Now before the

Page 1- OPINION AND ORDER

court is Northwest's bill of costs (#371) and motion for attorney's fees (#375). For the reasons

stated below, both motions are granted in part and denied in part.

## LEGAL STANDARDS

### I.    Bill of Costs

The entitlement of a prevailing party in a federal lawsuit to recover its costs, other than

attorney's fees, is governed by Federal Civil Procedure Rule 54(d)(1). In relevant part, Rule

54(d)(1) provides that such costs "should be allowed to the prevailing party" except where

federal statute, the rules of civil procedure, or a court order "provides otherwise." Fed. R. Civ. P.

54(d)(1). "By its terms, the rule creates a presumption in favor of awarding costs to a prevailing

party, but vests in the district court discretion to refuse to award costs." *Association of*

*Mexican-American Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000), *citing National*

*Info. Servs., Inc. v. TRW, Inc.*, 51 F.3d 1470, 1471 (9th Cir. 1995). "A district court need not

give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying

costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Save*

*Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003). However, in the event a court

declines to award a prevailing party its costs under Rule 54(d)(1), its reasons for so declining

must be specified. *See Association of Mexican-American Educators*, 231 F.3d at 591, *quoting*

*Subscription Television, Inc. v. Southern Cal. Theatre Owners Ass'n*, 576 F.2d 230, 234 (9th Cir.

1978). It is the burden of the party against whom costs are to be taxed to establish grounds for

denying award of costs. *See Save Our Valley*, 335 F.3d at 944-945, *citing National Info. Servs. v.*

*TRW, Inc.*, 51 F.3d 1470, 1471-1472 (9th Cir. 1995).

The expenses that the district courts are authorized to tax as costs under Rule 54(d)(1) are

enumerated at 28 U.S.C. § 1920. *See* 28 U.S.C. § 1920; *see also Crawford Fitting Co. v. J.T.*

*Gibbons, Inc.,* 482 U.S. 437, 441-445 (1987). Although the district courts have broad discretion to allow or disallow a prevailing party to recoup the ordinary costs of litigation, the court may not rely on that discretion to tax expenses beyond those enumerated at Section 1920. *See id.; see also Frederick v. City of Portland,* 162 F.R.D. 139, 142 (D. Or. 1995). Nevertheless, the district courts enjoy independent discretion to construe and interpret the expenses enumerated at Section 1920. *See Alflex Corp. v. Underwriters Lab., Inc.*, 914 F.2d 175, 177-178 (9th Cir. 1990) (*per curiam*).

## II.    Attorney's Fees

Federal Rule of Civil Procedure 37 provides that if a motion to compel disclosure or discovery is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). Attorney's fees are not to be awarded when any of the following exceptions applies: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id.*

Rule 37 also provides for sanctions against a party that destroys relevant evidence in violation of a discovery order. *United States ex rel. Berglund v. Boeing Co.*, 835 F. Supp. 2d 1020, 1050 (D. Or. 2011) (citing Fed. R. Civ. P. 37(b)(2); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). However, Rule 37(b)(2) does not authorize sanctions for more general discovery abuse when a party has not specifically disobeyed a court order or instruction. *See Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992).

Page 3- OPINION AND ORDER

In addition, under its inherent powers a district court may impose sanctions in the form of attorney's fees against a party or counsel who acts in "bad faith, vexatiously, wantonly, or for oppressive reasons." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006); *Berglund*, 835 F. Supp. 2d 1020, 1049, (D. Or. 2011).   Before awarding attorney's fees as sanctions, the court must make an express finding that the sanctioned party's behavior constituted or was tantamount to bad faith. *Id.*

## DISCUSSION

I.    **Bill of Costs**

Northwest requests an award of its costs in the total amount of $71,445.58.  This amount includes $200 for clerk of court fees, $37,631.43 for deposition and hearing transcripts, and $33,614.26 for printing, exemplification, and copying of materials.  PacifiCorp objects to many of these costs, including costs associated with: deposition transcripts not necessary for Northwest to prevail on its summary judgment motion; deposition videotaping; the summary judgment hearing transcript; copying potential deposition exhibits; tabs, binders, and folders used to assemble copies; copying documents provided to experts; copying Judge's Working Binders; unspecified and duplicative copying; and all electronic discovery fees unrelated to converting and Bates-numbering documents for production to PacifiCorp.  I address each aspect of disputed costs in turn.

A.    **Deposition and Hearing Transcripts**

28 U.S.C. § 1920(2) provides recovery for "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case."

1.    **Deposition Transcripts**

Deposition transcripts are necessarily obtained under § 1920(2) if the depositions were

introduced into evidence at trial, were required for a dispositive motion, or if taking the deposition was reasonable as part of the pretrial preparation of the case, as opposed to merely for counsel's convenience. *United States ex rel. Berglund v. Boeing Co.*, No. 03:02–cv–193–AC, 2012 WL 697140, at *2 (D. Or. Feb. 29, 2012).

PacifiCorp, however, seeks to limit recovery for deposition transcripts to only those necessary to support the particular argument on which Northwest succeeded. Because Northwest prevailed on its "no duty" argument, PacifiCorp argues that Northwest is not entitled to any of its deposition and hearing transcript costs which pertained to developing Northwest's factual arguments. Alternatively, PacifiCorp argues that Northwest is only entitled to costs for the six depositions it actually cited in connection with the "no-duty" argument. In support of this contention, PacifiCorp relies on a recent decision by Judge Mosman indicating that depositions pertaining to the merits of a case are not necessarily obtained under § 1920(2) when the court dismissed the action on purely jurisdictional grounds. *See AHM v. Portland Pub. Sch.*, Case No. 3:11-cv-00739-MO, slip op. at *3 (D. Or. Sept. 5, 2012.) But Judge Mosman cited no cases in adopting his narrow construction of § 1920(2) and I decline to apply it. Moreover, Northwest's successful "no duty" argument went directly to the merits of the case, whereas in *AHM* defendant prevailed because the court lacked jurisdiction over the action altogether. Finally, the relevant inquiry for §1920(2) is "whether the depositions reasonably seemed necessary at the time they were taken," not in retrospect after learning how the case was ultimately resolved. *Hunt v. City of Portland*, No. CV 08–802–AC, 2011 WL 3555772, at *6 (D. Or. Aug. 11, 2011). Northwest reasonably pursued depositions relating to several theories of defense at the outset of this case, not only its argument that it owed no duty of care to PacifiCorp. I therefore find that $37,429.57

of Northwest's deposition transcript costs are recoverable under § 1920(2).[1]

### 2.    Videography for Deposition

PacifiCorp next objects to costs for videography at the depositions of John Roscher and Ed Towes, which it argues was unnecessary. However, these depositions were taken by PacifiCorp and used primarily in PacifiCorp's motions to compel and motion for summary judgment. (Skelton Decl., #373, at 10, 12). And PacifiCorp– not Northwest– ordered them to be video recorded. *Id.* at n.1. As a result, it appears that Northwest paid for both the preparation of traditional deposition transcripts as well some portion of the additional costs incurred because of PacifiCorp's decision to videotape these depositions. The standard rationale for denying costs for a party's own decision to videotape depositions therefore does not apply in this instance. *Cf. Berglund*, 2012 WL 697140, at *3; *Davico v. Glaxosmithkline Pharmaceuticals*, CV No. 05–6052–TC, 2008 WL 624049, at *2 (D.Or. Jan. 23, 2008) ("In short, if a party wishes to videotape a deposition that is not a perpetuation deposition, it may certainly do so at its own expense, but this court is not going to pass on what it views to be an unnecessary expense to the other party by awarding such in a bill of costs."). The $1,180.00 in video deposition charges are appropriately taxed.

### 3.    Summary Judgment Hearing Transcript

PacifiCorp objects to Northwest taxing the cost of producing the transcript of the hearing on the parties summary judgment motions, arguing that Northwest made no filings between the date of the hearing and the date the court granted Northwest's summary judgment motion.

---

[1] This amount reduces Northwest's request of $37,631.42 by $201.85, the amount improperly included in the cost of the transcript for Barry Orgill's deposition. Compare (Skelton Decl., #373, ¶ r) with (Skelton Decl., #373, Ex. B at 18.)

Northwest insists that the summary judgment hearing transcript was necessary for pretrial

preparation and for review of the court's order on summary judgment. Because the court's

lengthy summary judgment order was self-explanatory and because the content of the summary

judgment oral argument itself was never at issue, I agree with PacifiCorp that the hearing

transcript was unnecessary and improperly taxed under §1920(2), even though hearing transcripts

may be necessary in other circumstances. *See, e.g., Berglund*, 2012 WL 697140, at *2

(transcripts from earlier hearings were necessary because defendant was forced to defend against

assertions made by plaintiff during oral argument). Therefore, Northwest may not recover the

$456.25 for the summary judgment hearing transcript.

**B.      Printing, Exemplification, and Copying**

28 U.S.C. § 1920 also provides for taxing of "[f]ees and disbursements for printing and

witnesses" as well as "[f]ees for exemplification and the costs of making copies of any materials

where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(3),(4).

**1.      Potential Deposition Exhibits**

PacifiCorp objects generally to $5,764.13 in costs for copies of "potential deposition

exhibits"– relevant documents that were taken to depositions about which witnesses may have

had knowledge. (Skelton Decl., #373, ¶4.b.i.) This category necessarily includes documents that

were eventually marked as exhibits in the depositions, which had to be re-copied once they were

marked. *Id.* PacifiCorp contends that costs for these copies are not recoverable because they

were made only for the convenience of Northwest's attorneys and amount to costs of attorney

preparation for depositions. I disagree. An attorney must arrive at deposition with four copies of

any document that may be marked as an exhibit: one each for herself, the deponent, opposing

counsel, and the court reporter. The fact that some of these potential deposition exhibits never

made it into the record does not diminish their necessity. *See Adidas Am., Inc. v. Payless*

*Shoesource, Inc.*, Nos. 01-1655-KI, 03-1116-KI, 2009 WL 302246, at *4 (D. Or. Feb. 9, 2009)

(citing *Haagen-Dazs Co ., Inc. v. Double Rainbow Gourmet Ice Creams, Inc.*, 920 F.2d 587, 588

(9th Cir.1990) (per curiam) (allowing costs for reproducing documents even though documents

were not introduced as evidence to support summary judgment motion).

Additionally, PacifiCorp objects to certain copying costs within this category, arguing

that Northwest's documentation fails to adequately describe the purpose for these copies.

Indeed, several entries in a chart created by Northwest summarizing these costs list copying of

potential deposition exhibits, but do not identify the name of the deponent, and the corresponding

invoices themselves do not even indicate that the copying was meant for depositions. (Skelton

Decl., #373, at Ex. F at 1-5, 7.) However, in a case of this size with so many copies being made,

Northwest's counsel's attestation that these charges are for potential deposition exhibits is

sufficient. *See Adidas Am., Inc*, 2009 WL 302246, at *4 (denying objection to copy charges that

were not specifically described because: "In a case of this size and nature, it would not be

possible for a law firm to track the nature of each copy and report the information on a per copy

basis to the court in a bill of costs. Likewise, it would not be possible for the court to review each

copy charge and determine if it was reasonably necessary for use in the case, as opposed to a

convenience for counsel. There are just too many documents to allow this type of review. I accept

counsels' statements in their declarations explaining that the copying costs were necessarily

incurred."). Therefore I decline to reduce Northwest's costs of $5,764.13 for copying potential

deposition exhibits.

Page 8- OPINION AND ORDER

### 2.    Marked Deposition Exhibits

Although PacifiCorp does not object generally to the Northwest's taxing of copying costs

for two sets of marked deposition exhibits, PacifiCorp objects to specific invoices that

purportedly lack descriptions of the purpose for the copying.  PacifiCorp also objects to

duplicative copying costs, asserting that Northwest has sought to recover for copying of five or

more sets of deposition exhibits.  However, Northwest's counsel declares that each of these

invoices correspond with copying of marked deposition exhibits and that Northwest seeks

compensation only for two sets of such exhibits out of the five sets that it produced.  (Skelton

Decl., #373, at 15, Ex. E.)  I accept this explanation generally, except with respect to two

invoices dated 8/31/11, which indicate that Northwest made ten copies of exhibits 220-255,

rather than the standard five sets.  *Id.*, Ex. E at 10, 11.  Accordingly, I reduce Northwest's costs

for these marked exhibits by $900, representing the cost of the extra five sets of copies of

exhibits 220-255.  *Id.*, Ex. E at 10.

### 3.    Binders, Tabs, and Folders

PacifiCorp next objects to $2,954.55 in so-called "office supply costs," including tabs,

file folders, binders, "client communication" related to copying, and "Manual

Formatting/Processing of spreadsheets and problematic files" related to copying.  PacifiCorp

contends that these costs are considered a part of a law firm's overhead and are not necessarily

incurred under §1920, citing *Avila v. Willits Env't*, No. C 99–03941 SI, 2009 WL 4254367, at *3

(N.D. Cal. Nov. 24, 2009).  But that case addresses the recoverability of labor and machine set-

up costs where a party does not have access to documents and has to pay a government agency to

make copies on its behalf, not the types of charges at issue here.  *Id.*  Rather, a recent decision in

Page 9- OPINION AND ORDER

the Federal Circuit suggests that tabs, binders, and the like are recoverable under § 1920(4), so

long as they are related to assembling documents whose reproduction is also necessary under

Section 1920. *See Synopsys, Inc. v. Ricoh Co., Ltd. (In re Ricoh Co. Patent Litigation)*, 661 F.3d

1361, 1368 n.3 (Fed. Cir. 2011). This is eminently reasonable – having stack upon stack of

photocopied documents without binders to contain them or tabs to divide makes the copies

themselves almost useless. Northwest is entitled to recover these costs.

### 4.    Copies of Documents for Expert Review

PacifiCorp objects to $1,134.94 for copying of documents for expert review, which

PacifiCorp characterizes as copies made solely for the convenience of attorneys. *See Arboireau*

*v. Adidas Salomon AG*, No. 01–105–ST, 2002 WL 31466564, at *6 (D. Or. June 14, 2002)

("recoverable copying costs do not include extra copies of filed papers, correspondence, and

copies of cases since these are prepared for the convenience of the attorneys") (internal quotation

omitted). Northwest, however, explains that these documents were initially provided by

PacifiCorp to Northwest in electronic form. (Skelton Decl., #373, at 16.) Northwest then had to

print these documents in order to provide them to its experts, who were retained to rebut opinions

offered by PacifiCorp experts. *Id.* Courts in this district have awarded copying costs for "expert

reports and related documentation." *Adidas Am., Inc.*, 2009 WL 302246, at *5. Although

finished expert reports are not exactly the same as the materials Northwest provided to its experts

for initial review in this case, I still find that copying of such materials is not just a matter of

convenience for counsel, but rather is necessary when engaging an expert witness. PacifiCorp

argues that Northwest made duplicate copies of certain documents, since an invoice for one copy

job indicate two sets of copies were made and does not identify which expert(s) were to receive

the documents. (Skelton Decl., #373, at Ex. G.) Northwest, however, indicates that these

documents were produced for two separate experts. *Id.*, Ex. G at 1. Again, in a case of this

complexity, I accept Northwest's representations that it seeks compensation for only one set of

copies per expert and I decline to reduce Northwest's costs for copying of documents for expert

review . *See Adidas Am., Inc.*, 2009 WL 302246, at *5.

## 5. Judge Working Binders

PacifiCorp objects to $1,738.56 for coping of Judge Working Binders, arguing that this

charge commingles permissible costs for judge's copies on Northwest's own motion with

impermissible costs for working copies of other parties' motions, and provides no way of

determining which costs are associated with judge's as opposed to attorney's copies. Northwest

explains that while it made multiple copies of these documents, the costs sought in this category

correspond only with judge's copies. (Skelton Decl., #373, at 16-17.) For example, where

Northwest made four copies of certain documents, it seeks recovery for only one set. But this

explanation does not address the first issue PacifiCorp raises. Indeed, two of the three invoices

indicate copies were made to create working versions of pleadings filed by multiple parties, not

just by Northwest. (Skelton Decl., #373, Ex. H, at 1-4) ("Combined work for NWP, GTN,

PacifiCorp, Confidential and Declaration sets" and "GTN Spoliation Working Binder & NWP

Spoliation Working Binder"). Northwest is not required to submit judge's copies on behalf of

other parties in the case. I therefore only allow costs that are identified as judge's copies that

Northwest was required to submit– $57.89 for judge's copies of Northwest's opposition to

PacifiCorp's summary judgment motion. *See Berglund*, 2012 WL 697140, at *4 (denying

copying costs where the court cannot determine which among the requested costs could be

awarded). Northwest's request is thus reduced by $1,680.67 with respect to costs for copying of these documents.

### 6.    Electronic Discovery Fees

PacifiCorp also objects to most of Northwest's costs relating to electronic discovery. PacifiCorp concedes that Northwest is entitled to recover costs for converting its own documents into searchable PDFs and Bates stamping those documents in preparation for producing them to PacifiCorp. However, PacifiCorp resists other of Northwest's costs relating to electronic discovery, namely $16,091.10 in payments to attorneys and staff in the K&L Gates e-Dat group and $951.26 in data storage costs.

In recognition of the growing use of electronic discovery, in 2008 Congress amended § 1920(4) from "[a] judge or clerk of any court of the United States may tax as costs the following: ... fees for exemplifications and copies of papers" to "fees for exemplification and the costs of making copies of any materials." *Jardin v. DATAllegro, Inc.*, No. 08–CV–1462–IEG (WVG), 2011 WL 4835742, at *5 (S.D. Cal. Oct. 12, 2011). Consequently, where circumstances require conversion of electronic data into a different format to share with parties during discovery, "exemplification" has been deemed to encompass all costs stemming from that process of conversion. *Id.* at *6 (cost of converting electronic discovery to a new data format for electronic production in lieu of making conventional copies taxable under § 1920(4)). Courts recognize that costs of technical experts required to physically prepare and produce electronic discovery may be properly taxed under § 1920(4) because these services are substantially different from those usually offered by attorneys or paralegals. *See Tibble v. Edison Int'l*, No. CV 07–5359 SVW (AGRx), 2011 WL 3759927, at *6 (C.D. Cal. Aug. 22, 2011); *Jardin*, 2011 WL 4835742,

at *6–8.  However, fees for "intellectual efforts" involved in production of documents are not

taxable under § 1920(4), such as legal fees charged by attorneys or paralegals who review

documents to determine responsiveness, privilege, and confidentiality designations.  *Jardin*, 2011

WL 4835742, at *7-8 (quoting *Romero v. Pomona*, 883 F.2d 1418, 1428 (9th Cir. 1989)).

Accordingly, third-party consulting services limited to technical issues related to the physical

production of information– and unrelated to review of documents or strategic decision-making–

are discoverable. *Id.* at *8-*9.

    Here, Northwest describes several steps in its electronic discovery process for which it

incurred costs (or fees) for services from its vender, the K&L Gates e-DAT group.  First, the e-

DAT group helped Northwest collect all documents from Northwest's servers that could

potentially be responsive to numerous PacifiCorp requests for production and then winnow down

that collection significantly by eliminating redundant or irrelevant documents.  (Skelton Decl.,

#373 at 17.)  Second, the e-DAT group processed the material into a document database.  *Id.* at

18.  Third, attorneys reviewed the material and marked responsive content.[2]  *Id.*  Fourth, the e-

DAT group Bates labeled the documents for production.  *Id.*  Fifth, the e-DAT group converted

the documents into searchable PDFs, a format reviewable by PacifiCorp.  *Id.*  Last, prior to and

during this whole process, the e-DAT group stored Northwest's electronic materials on its

servers, along with documents produced electronically by other parties.  *Id.*

    From the authority discussed above, it is clear that the first step in the electronic

discovery process – collecting documents and culling them for responsiveness– involves the type

of "intellectual efforts" that are not taxable under §1920(4).  Even though technical expertise was

---

    [2] Northwest does not seek to recover costs for this attorney review.

Page 13- OPINION AND ORDER

undoubtedly required for the e-DAT group to search Northwest's servers, legal expertise was also necessary to formulate those searches based on discovery requests and to "ensure all material responsive to PacifiCorp's requests was collected." (Skelton Decl., #373, at 18.)  The fact that two of the members of the e-DAT team are attorneys at K&L Gates is relevant, but not dispositive.  Rather, the fact that these attorneys and other non-attorney staff billed for such activities as "analyz[ing]" documents and strategizing about "structuring email search protocols," indicates that their expertise was not purely technical and was also aimed at identifying responsive materials.  (Skelton Decl., #373, Ex. I, at 11, 43-44, 50).  Costs associated with these activities are not taxable.

It is less clear whether costs incurred in processing the selected electronic documents into a useful database are taxable.  Some courts find that database creation is not taxable.  *See  Mann v. Heckler & Koch Def., Inc.*, No. 1:08cv611 (JCC), 2011 WL 1599580, at *8-9 (E.D. Va. Apr. 28, 2011) (cost of having a vendor compile electronic files into an electronic database was not taxable);  *Kellogg Brown & Root Int'l, Inc. v. Altanmia Commercial Mktg. Co.* W.L.L., No. H–07–2684, 2009 WL 1457632, at *5 (S.D. Tex. May 26, 2009) ("The steps of extracting data from an electronic medium and storing that data for possible use in discovery is more like the work of an attorney or legal assistant in locating and segregating documents that may be responsive to discovery than it is like copying those documents for use in a case.");  *Summit Tech., Inc. v. Nidek Co.*, 435 F.3d 1371, 1378 (Fed. Cir. 2006).  However, other courts have allowed recovery for electronic storage of documents generally.  *See Adidas Am., Inc.*, 2009 WL 302246, at *6 ("We are well past the day when all copies are basic photocopies. The electronic storage of documents, especially when they are numerous, allows a more efficient way

to litigate the case and to present the evidence at trial.")  Because the task of converting already-selected files into a database is a purely technical one, I find that these costs are taxable.

Northwest concedes that the third step– review and marking by attorneys– is not taxable. And PacifiCorp concedes the that fourth and fifth steps– Bates stamping and conversion to searchable PDFs– are taxable.  Finally, the storage of electronic data throughout this process is obviously required to prepare and produce the requested electronic discovery, requires no intellectual efforts, and may be properly taxed under § 1920(4).

Accordingly, Northwest's electronic discovery costs must be reduced to eliminate costs associated with the initial step of collecting and narrowing potentially responsive documents from Northwest's own servers.  Admittedly, it is not obvious to the court how to separate these costs from others that are taxable.  However, from the records provided by Northwest, it appears that the "e-Dat Charges" totaling $16,091.10 are a fair approximation for the intellectual efforts necessary in the initial step of the electronic discovery process, while the "ESI Conversion & Data Storage" charges totaling $4,597.90 fairly approximate the more technical aspects of database processing, Bates stamping, and conversion.   (Skelton Decl., #373, Ex. I at 1.) Northwest's costs are thus reduced by $16,091.10.

In sum, Northwest's total bill of costs seeking $71,445.58 must be reduced by $18,671.77, yielding a total award of costs in the amount of $52,773.81.

## II.    Attorney's Fees

Pursuant to Rule 37 and the court's inherent powers, Northwest seeks attorney's fees and expenses of $134,741.78 as sanctions for PacifiCorp's spoliation of evidence and discovery violations.  Concerning spoliation, Northwest argues that PacifiCorp's willful destruction of key

physical evidence in this case required Northwest to engage in significant additional investigation

and motion practice. Similarly, Northwest contends that Northwest withholding of discoverable

documents– the 2008 Exponent Root Cause Analysis, Black & Veatch and Anamet Reports– and

inadequate preparation of its 30(b)(6) witness unnecessarily lengthened discovery and required

Northwest to incur additional attorney's fees.

### A.    Procedural Issues

Before addressing the merits of Northwest's motion, I pause to consider several

procedural issues. PacifiCorp argues that the court cannot now award attorney's fees for

spoliation or discovery violations because the court previously denied Northwest's requests for

such fees. PacifiCorp points out that Northwest explicitly sought attorney's fees in its motions to

compel, and also requested any "just, equitable, and proper" relief in its earlier spoliation

sanctions motion, which ostensibly implied a request for attorney's fees. (#144 at 3, #145 at 22,

#180 at 2-3, #279 at 2-3.) And PacifiCorp observes the court failed to award Northwest

attorney's fees when it granted the various motions to compel and denied the spoliation sanction

motion as moot after dismissing Northwest from the case. (Opinion and Order, #170, Opinion

and Order, #210, Opinion and Order, #361.) These previous rulings, however, do not preclude

Northwest's current motion for fees because the court never expressly addressed the issue of

fees, nor made any findings concerning the entitlement to fees. To the extent that the court

inadvertently overlooked those requests for attorney's fees at the time, the court considers them

now.

PacifiCorp raises two other timing concerns. First, PacifiCorp argues that Northwest

cannot effectively "reopen" its spoliation sanctions motion by now requesting monetary

sanctions, because the court has already denied Northwest's spoliation sanctions as moot.  This is just another variation on the preclusion theme.  The court made numerous findings about the nature of PacifiCorp's spoliation, but denied Northwest's motion for spoliation sanctions as moot because Northwest's requested relief – exclusion of evidence and adverse inference instructions – was obviated by the court's dismissal of all claims against Northwest.  The court's denial of Northwest's earlier spoliation sanctions motion as moot has no preclusive effect on the court's ability to grant a different form of relief.  Second, PacifiCorp contends that Northwest's current motion for attorney's fees as a spoliation sanction is untimely because the court previously indicated that "[s]poliation issue[s] may also be presented either along with dispositive motions or as part of motions in limine that will be filed after preparation of a pretrial order."  (Opinion and Order, #170, at 13.)  PacifiCorp ignores the immediately preceding sentence from the court's ruling, however, which provides that "the court will address any spoliation arguments as they are presented by motion and set appropriate schedules for briefing."  *Id.*  Northwest's current motion for attorney's fees does not violate any court scheduling order.

### B.  Spoliation

Northwest moves for attorney's fees as a spoliation sanction primarily under the court's inherent powers.  *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006) (under its inherent powers the district court may impose spoliation sanctions, including attorney's fees, in the form of attorney's fees against a party or counsel who acts in "bad faith, vexatiously, wantonly, or for oppressive reasons").  In *Leon*, the Ninth Circuit held that a district court " must make an express finding that the sanctioned party's behavior constituted or was tantamount to bad faith'" as a prerequisite to awarding attorney's fees as a spoliation sanction.  464 F.3d at 961

(quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997)). "Bad faith ... includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). Here, PacifiCorp argues that attorney's fees are unjustified because the court has never made the requisite finding that PacifiCorp acted in bad faith.

The Ninth Circuit recognizes that willful spoliation of evidence may be the type of behavior that constitutes or is tantamount to bad faith conduct. In *Leon*, for example, an employment discrimination plaintiff was allowed to keep his work laptop while on unpaid leave, but was warned to preserve all data on the laptop. 464 F.3d at 955-956. Instead, he intentionally erased portions of the laptop's hard drive that contained "personal files," purportedly to protect his privacy, although the erased files also included pornography and other evidence potentially relevant to his employment claims. *Id.* The district court dismissed the action under its inherent powers as a sanction for the plaintiff's spoliation of evidence, finding that plaintiff had acted in bad faith, and also imposed a monetary sanction against plaintiff for the costs of investigation and litigating the spoliation issue. *Id.* at 956-957. On appeal, the Ninth Circuit reviewed the district court's factual finding of bad faith, identifying no clear error. *Id.* at 959. The Ninth Circuit recognized the district court found plaintiff's behavior "amounted to willful spoliation" because he knew he was under a duty to preserve the data on his laptop but "intentionally" deleted many files. *Id.*

Northwest also cites other cases in this circuit that impose attorney's fees as spoliation sanctions where a party commits willful spoliation, even though the court did not make an explicit finding of "bad faith," indicating that willful destruction of potentially relevant evidence may be conduct tantamount to bad faith. For example, in *United States ex rel. Berglund v.*

Page 18- OPINION AND ORDER

*Boeing* Co., 835 F. Supp. 2d 1020 (D. Or. 2011), the district court determined that plaintiff

willfully destroyed emails and discarded several hard drives that were relevant to his claim

against defendant – one of which the court specifically ordered him to preserve – and lied about

those activities. *Id.* at 1054. The district court never explicitly found that plaintiff acted in "bad

faith," but nonetheless ordered plaintiff to pay defendant for the cost of investigating plaintiff's

destruction of evidence. *Id.* at 1055. Similarly, in *Kopitar v. Nationwide Mut. Ins. Co.*, 266

F.R.D. 493, 497, 501 (E.D. Cal. 2010), the court imposed attorney's fees associated with

bringing a spoliation motion pursuant to the court's inherent power after finding that the plaintiff

committed "willful spoliation," even though the court made no express finding of bad faith.

There, plaintiff had clear notice that he needed to preserve a mold-damaged wall in his home and

allow defendant's experts to be present if he repaired or demolished the wall, but tore down the

wall anyway without notifying defendant. *Id.* at 497.

I do not agree with Northwest, however, that in the Ninth Circuit willful spoliation is

necessarily tantamount to bad faith conduct. Each of the cases discussed above featured a higher

level of misconduct than mere willful destruction of potentially relevant evidence. *See Leon*, 464

F.3d at 959. Rather, the court could infer that plaintiffs in those cases had an *improper purpose*

for destroying the evidence, based on the fact that each contravened clear instructions to preserve

evidence and/or destroyed evidence that was obviously relevant to ongoing litigation. For

instance, in *Leon*, the plaintiff was warned of the need to preserve data on his laptop during

litigation. Likewise, in *Berglund*, the plaintiff deleted relevant data after the start of litigation,

disobeyed a court's order to preserve certain evidence, and even lied about that conduct. And in

*Kopitar*, the plaintiff ignored a clear warning not to alter relevant evidence without the defendant

Page 19- OPINION AND ORDER

being present. Thus, these cases imposing attorney's fee sanctions even without an express bad

faith (or "tantamount to bad faith") finding still comport with the Ninth Circuit's jurisprudence,

which recognizes that the type of bad faith necessary to impose attorney's fees as a sanction

under the court's inherent powers requires conduct substantially motivated by an improper

purpose. *See Fink*, 239 F.3d at 992 ("a finding of bad faith does not require that the legal and

factual basis for the action prove totally frivolous; where a litigant is substantially motivated by

vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the

assessment of attorney's fees.")

    In this case, I previously found that PacifiCorp spoliated fuel nozzles, the fuel scrubber,

oil and gas samples, and other physical evidence, which justified my imposition of evidentiary

sanctions under the court's inherent powers because PacifiCorp had willfully destroyed

potentially relevant evidence. (Opinion and Order, #361, at 20-40.)  But that finding does not

mean I must now conclude PacifiCorp acted in bad faith when it destroyed each piece of

evidence. PacifiCorp destroyed the majority of the plant's damaged fuel nozzles by refurbishing

them for future use, but failed to notify defendants that they were doing so.  While this conduct

was unquestionably willful, it was not necessarily infected with an improper motive, especially

given the repetitive outages, the high cost of buying replacement nozzles, and the need to ensure

back-up nozzles remained available to avoid future extended outages.  Nor was PacifiCorp's

destruction of the gas and liquid samples, the pig, filter cartridge, reference oil, corrosion

samples, and metallurgical samples tantamount to bad faith.  These original samples appear to

have been discarded after testing of them was conducted and results provided.

    By contrast, I conclude that PacifiCorp possessed some improper motive for destroying

the fuel scrubber. First, PacifiCorp scrapped the scrubber well after this litigation commenced. And unlike with the damaged fuel nozzles, PacifiCorp had no credible explanation for destroying this obviously relevant piece of physical evidence. Consequently, I find that PacifiCorp's destruction of the fuel scrubber was tantamount to bad faith conduct, but that PacifiCorp's destruction of other evidence in this case, while willful, was not tantamount to bad faith. Accordingly, Northwest is entitled only to a portion of attorney's fees and costs incurred in investigating and challenging PacifiCorp's spoliation.

### C.    Withholding Discovery

#### 1.    Documents

Northwest argues that PacifiCorp's failure to timely produce the 2008 Exponent Root Cause Analysis, the Black & Veatch Report, and the Anamet Report required Northwest to move to compel those documents and incur unnecessary attorney's fees that should be awarded under Fed. R. Civ. P. 37(a)(5)(A) and the court's inherent powers.[3] Rule 37 provides that a court should not impose reasonable expenses associated with filing a successful motion to compel discovery if "the opposing party's nondisclosure, response, or objection was substantially justified" or if "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii),(iii). "A request for discovery is 'substantially justified' under [Rule 37(a)(5)(A)(ii)] if reasonable people could differ as to whether the party requested must comply." *Reygo Pac. Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir. 1982), *overruled on other grounds by Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1055 n.2 (9th Cir. 2007) (citing C. Wright and A.

---

[3] Although Northwest invokes the court's inherent powers to award fees associated with successful motions to compel, both parties' arguments focus on the standard for awarding such fees under Rul 37(a)(5)(A).

Miller, Federal Practice and Procedure s 2288).  The losing party bears the burden to demonstrate

that its discovery conduct was substantially justified.  *See* Adv. Comm. Notes to 1970

Amendment to former Fed. R. Civ. P.  37(a)(4).

### a.    2008 Exponent Root Cause Analysis

The 2008 Exponent Root Cause Analysis was a 2008 report authored by several scientists

at Exponent, including Dr. Kemal.  The report, labeled as a "draft," discussed the nature of

various outages at the Hermiston plant and the firm's conclusions about the causes of those

outages.   Dr. Kemal's 2011 Rule 26 expert report copied much of the text of the 2008 report

verbatim, but omitted several conclusions suggesting PacifiCorp's own negligence contributed to

those outages.

Starting in June 2011, Northwest inquired about the existence of a root cause analysis of

the plant outages and also requested production of all reports provided to PacifiCorp's testifying

experts.   PacifiCorp did not reveal the existence of the 2008 report at that time.  During a July

27, 2011 hearing, the court specifically ordered PacifiCorp to produce any reports of consultants

who would later become reporting experts, urging the parties not to "hid[e] the ball . . . ."[4]

(Hearing Transcript, #129, at 73-74.)  Also in July, PacifiCorp witness and Hermiston plant

manager Frank Glasgow testified that no analysis of the root causes of the plant outages had been

performed.  (Skelton Dep., #222, Ex. 7, at 42-44.)  Then, on October 19, 2011, the court ordered

PacifiCorp to produce all documents reviewed by Dr. Kemal in the preparation of his 2011 Rule

26 expert report, but PacifiCorp again did not reveal the existence of the 2008 report.  (#152.)

_____

[4] That hearing occurred at least a month before the deadline for PacifiCorp to disclose its
expert reports.  (#141.)  In fact, Dr. Kemal's Rule 26 report was dated "October 2011."

Page 22- OPINION AND ORDER

Only after defendants discovered the 2008 report listed on the Exponent website in November 2011 did PacifiCorp acknowledge its existence.

Northwest moved to compel the 2008 report, but PacifiCorp argued that it was a draft of Dr. Kemal's 2011 expert report and therefore protected from disclosure under the recently amended Rule 26(b)(4)(B). After reviewing the document *in camera*, the court concluded that it could not be considered a "draft" of the 2011 Dr. Kemal expert report, and ordered PacifiCorp to produce it. (#210.) PacifiCorp moved for reconsideration, arguing both that the report was protected as a draft under Rule 26(b)(4)(B) and that, even if the report was not a draft, it was otherwise protected under the work product doctrine of Rule 26(b)(3)(B) or protected because it contained opinions of a consulting expert under Rule 26(b)(4)(D). The court denied reconsideration and PacifiCorp eventually produced the report in May 2012. (#224, #225.)

Northwest argues that PacifiCorp's suppression of the existence of the 2008 report and PacifiCorp's unwarranted resistance to producing the report once identified justify an award of attorney's fees incurred in pursuing its production. I agree that PacifiCorp's failure to initially acknowledge the existence of the 2008 report from June to November 2011 was completely unjustified, and necessarily led to certain increased costs associated with Northwest's continued efforts to seek out the root cause analysis through other avenues. PacifiCorp does not even address this point in its opposition to the current motion for attorney's fees, effectively conceding that it lacked substantial justification– or any legitimate justification at all– for hiding the report's existence. Moreover, in light of the aspects of the report finding PacifiCorp's own conduct contributed to the outages, I find that PacifiCorp's attempts to conceal the existence of the 2008 report was tantamount to bad faith conduct. This type of deceptive activity reflects

Page 23- OPINION AND ORDER

poorly on the counsel who permit or encourage it, hinders the efficiency of the litigation process, and ultimately undermines the public's faith in the courts. It must be strongly discouraged. Northwest is therefore entitled under Rule 37(a)(5)(A) and this court's inherent authority to attorney's fees incurred in pursuing the 2008 report from June to November 2011.

I disagree, however, that PacifiCorp's resistance to *producing* the report – once identified– was unjustified. This court's ruling concerning the report required interpretation and application of language recently added to Rule 26 that few courts had ever addressed. Indeed, the question of what constitutes a "draft" report was one of first impression, not only in this circuit, but nationwide. Moreover, the 2008 report contained some indicia of being a draft of the later 2011 expert report and the court required a thorough *in camera* examination of the report to conclude that it should not be considered a draft. Finally, the interplay between Rule 26's protections for draft expert reports and other independent Rule 26 protections was hardly clear. Because reasonable minds could differ as to whether PacifiCorp was required to produce the report, PacifiCorp's resistance to Northwest's motion to compel and PacifiCorp's motion for reconsideration were both substantially justified. *Reygo*, 680 F.2d at 649.

### b.    Black & Veatch Report

The Black & Veatch Report was generated based on a site visit to the Hermiston plant in February 2008, shortly before the last of the outages for which PacifiCorp claims damages in this action. PacifiCorp provided the Black & Veatch Report to its expert Dr. Kemal, who listed it in an appendix to his report and reviewed it, but declared that he did not rely on it or consider it relevant to the opinions he offered in the report. Northwest moved to compel the report (#144), but PacifiCorp argued that it was not required to produce the report because Dr. Kemal did not

rely on it or consider it relevant. (#155, at 4.)  This court ordered PacifiCorp to produce the report, reasoning that since Dr. Kemal read and considered the report among other documents, it was part of the "facts or data considered" by the expert witness "in forming his opinions to be expressed" and must be disclosed under Fed. R. Civ. P. 26(a)(4)(C)(ii). (#170.)  PacifiCorp argues that its resistance to producing the Black & Veatch report was substantially justified, based on Dr. Kemal's declaration. I agree. Reasonable minds could differ concerning whether a document that an expert reads but finds to be irrelevant to his own opinions constitutes data considered "in forming his opinions to be expressed."

### c.      Anament Report

The Anamet Report was also listed in an appendix to Dr. Kemal's report and relied upon by Dr. Kemal in his analysis. (Opinion and Order, #170, at 3.)  Northwest moved to compel all the documents listed in that appendix– which included the Anament Report– arguing that Dr. Kemal had relied upon them. (Mot. to Compel, #144.)  PacifiCorp produced many other documents listed in the appendix before resisting Northwest's motion to compel, but not the Anament Report. (Response Br., #155, at 4); (Reply Br., #160, at 5 n.8.)  This court then ordered PacifiCorp to produce the report. (#170, at 3.)  PacifiCorp now explains that the document was "inadvertently not produced," and argues that defendants made similar oversights during discovery in this case. PacifiCorp also notes that the Anament Report played such a minor role in the motion to compel briefing that PacifiCorp's failure to produce it could not have required Northwest to incur more than a few minutes in additional effort. Although PacifiCorp's failure to produce the report was not substantially justified, the parties' entire discussion of the Anamet Report was confined to a single sentence in briefing. Under these circumstances, an award of

expenses pertaining to efforts to secure the Anament Report would be unjust. *See* Fed. R. Civ. P. 37(a)(5)(A)(iii).

### 2.    Unprepared 30(b)(6) Witness

Finally, Northwest contends that PacifiCorp's failure to properly prepare Shane Holst, its 30(b)(6) witness, required Northwest to seek the court's intervention. After Holst could not testify about two noticed deposition topics, defendants moved to compel PacifiCorp to produce other witnesses who could address those topics. The court found that PacifiCorp had not satisfied its obligation to provide a deponent knowledgeable about the first of the two topics, the details of gas testing conducted by FERC in late 2008 and 2009, and ordered PacifiCorp to either re-designate a different witness or adequately prepare Holst on that topic. (Opinion and Order, #170, at 10-11.) Citing *Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989), the court recognized that a corporation which fails to adequately prepare its 30(b)(6) witness may be required to bear the additional expenses associated with re-opening the 30(b)(6) deposition. *Id.* at 11. Northwest now asks the court to award Northwest those fees and expenses. PacifiCorp argues that an award of fees and costs would be inappropriate because the court granted Northwest's motion only in part, and because PacifiCorp's resistance to re-designating a witness concerning FERC gas testing was not entirely without merit. To the extent that Northwest seeks fees and reasonable expenses associated with bringing its motion to compel a new 30(b)(6) deponent, no such fees and expenses are awarded because PacifiCorp's resistance to that motion was substantially justified. However, Northwest is entitled to the fees and reasonable expenses of conducting the second Holst deposition, which would have been avoided had PacifiCorp properly prepared Holst initially. *See Marker*, 125 F.R.D. at 127 (awarding

compensation for attorney travel time and expenses for additional 30(b)(6) deposition).

**D.    Remedy**

As described above, Northwest is entitled to an award of a portion of its requested attorney's fees and costs, specifically those associated with: (1) investigating and pursuing spoliation sanctions for PacifiCorp's destruction of the fuel scrubber; (2) identifying and pursuing the 2008 Exponent Root Cause Analysis that PacifiCorp improperly failed to identify; and (3) re-opening the 30(b)(6) deposition of Shane Holst concerning the details of gas testing conducted by FERC. Because it is impossible to precisely determine which entries in Northwest's billing records correspond with these efforts, the court estimates that Northwest is entitled to 20% of its requested fees, or $27,148.36.

## CONCLUSION

For the reasons discussed above, Northwest's Bill of Costs (#371) is granted in part and denied in part, and Northwest is awarded its cost in the amount of $52,773.81. Northwest's motion for attorney's fees (#375) is granted in part and denied in part, and Northwest is awarded its attorney's fees in the amount of $27,148.36.

IT IS SO ORDERED.

Dated this 10th day of December, 2012.

Honorable Paul Papak
United States Magistrate Judge