IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PACIFICORP, an Oregon
corporation,

                Plaintiff,                            3:10-cv-00099-PK

v.                                           OPINION AND ORDER

GAS TRANSMISSION NORTHWEST
CORPORATION, a California
corporation,

                Defendant.

---

PAPAK, Magistrate Judge:

      Plaintiff PacifiCorp brings this action against defendant Gas Transmission Northwest

Corporation ("GTN") arising out of the alleged contamination of natural gas causing damage to

PacifiCorp's Hermiston power plant.  The matters before the court are: (1) PacifiCorp's motion

for reconsideration of the court's order imposing spoliation sanctions and motion for sanctions

against GTN (#441); and (2) GTN's motion for leave to file its first amended answer, affirmative

defenses, and original counterclaims (#447).  For the reasons set forth below, the motion for

reconsideration, the motion for sanctions, and the motion for leave to file an amended answer are

denied.

## BACKGROUND

On December 30, 2009, PacifiCorp filed a complaint in the Circuit Court for the County

of Multnomah alleging state-law claims for negligence, negligence/res ipsa loquitur, trespass, and

nuisance against Northwest Pipeline ("Northwest") and negligence/res ipsa loquitur and breach of

contract against GTN.  On February 1, 2010, GTN removed the action to this court.

After extensive discovery, the parties filed various motions, including GTN's motion for

sanctions based on spoliation, Northwest's motion for summary judgment, GTN's motion for

summary judgment, PacifiCorp's motion for partial summary judgment, and GTN's motion to

stay the proceedings pending a referral to the Federal Energy Regulatory Commission ("FERC").

On July 16, 2012, the court ruled on the parties' various motions and, among other things,

granted summary judgment in favor of Northwest and granted summary judgment in favor of

GTN on PacifiCorp's negligence/res ipsa loquitur claim, leaving only PacifiCorp's breach-of-

contract claim against GTN for trial.  Furthermore, the court granted GTN's motion to stay the

proceedings pending a referral to FERC for the proper interpretation of the phrase "commercially

free" of contaminates.  Relevant to the instant motion for reconsideration is the portion of the

court's July 16, 2012 opinion addressing GTN's motion for sanctions for spoliation.  The court

determined that PacifiCorp had willfully disposed of relevant evidence, including damaged

turbine parts and a scrubber.

Page 2 - OPINION AND ORDER

On April 11, 2013, FERC issued its decision on the proper interpretation of the phrase "commercially free" of contaminates. The court lifted the stay and set a trial date of March 11, 2014. On July 2, 2013, PacifiCorp filed its motion for reconsideration of the court's July 16, 2012 order imposing sanctions for spoliation. On July 26, 2013, GTN filed a resistance (#452) to PacifiCorp's motion for reconsideration. On August 16, 2013, PacifiCorp filed a reply (#464).

On July 19, 2013, GTN filed its motion for leave to file an amended answer, affirmative defenses, and original counterclaims. On August 9, 2013, PacifiCorp filed a resistance (#461) to GTN's motion for leave to file an amended answer. On August 30, 2013, GTN filed a reply (#471). The motions are fully submitted and ready for decision.

## ANALYSIS

I.    **PacifiCorp's Motion for Reconsideration**

A.    **Standard**

"'As long as a district court has jurisdiction over [a] case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.'" *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001), *quoting Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981) (emphasis omitted); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). A court should reconsider its earlier decision if it "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an

intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *accord Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989); *see also Am. Rivers v. NOAA Fisheries*, No. CV-04-00061-RE, 2006 WL 1983178, at *2 (D. Or. July 14, 2006) (discussing motions to reconsider under Rule 54(b) and noting that district courts generally apply the same standards as used in motions under Rule 59 and Rule 60). The court's exercise of its inherent authority to amend its prior orders is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted) (internal quotation marks omitted).

### B.    Parties' Arguments

In its motion for reconsideration, PacifiCorp requests that the court reconsider the sanction it imposed for PacifiCorp's destruction of fuel nozzles. PacifiCorp argues that the court applied an incorrect standard in imposing a sanction that is the equivalent of an outright dismissal. Specifically, PacifiCorp contends that, to impose the sanction of dismissal, the court was required to find that PacifiCorp deliberately engaged in deceptive practices that undermined the integrity of the judicial proceedings.

PacifiCorp also argues that, contrary to the court's suggestion otherwise, GTN suffered little to no prejudice as a result of PacifiCorp's destruction or disposal of physical evidence because: (1) GTN is still free to investigate other causes for the outages by, for example, examining the same type of fuel nozzle to see if there are design defects and reviewing operator logs to see if the outages were caused by operator error; (2) GTN has access to all the same evidence Dr. Abid Kemal, PacifiCorp's expert, had in reaching his conclusions, including the fuel

Page 4 - OPINION AND ORDER

nozzles from the July 2007 outage and photographs of the damaged turbines, and GTN's experts are free to review that evidence and draw their own conclusions from it; and (3) GTN's recently produced documents show that it knew that the outages at the Hermiston Plant were caused by compressor oil and, therefore, GTN's inspection of the destroyed or disposed of evidence would not tell GTN something it did not already know.

Finally, PacifiCorp argues that the court improperly assumed that photographs are not an adequate substitute for physical evidence when, in fact, Dr. Kemal testified that it was an industry practice to rely on photographs to determine cause in a case like this. Furthermore, PacifiCorp contends that the court incorrectly assumed that General Electric's ("GE") photographs were unreliable when there is no evidence that GE was biased. Thus, PacifiCorp requests that the court eliminate the spoliation sanctions altogether or, at a minimum, allow PacifiCorp to present evidence regarding the August and September 2007 outages but give an adverse inference instruction.

In response, GTN contends that PacifiCorp has failed "to satisfy the difficult standard for reconsideration and otherwise provides no reason for the Court to reconsider its Order." GTN's Resistance to Motion for Reconsideration, #452, at 10. First, GTN contends that the standard for reconsideration is high and PacifiCorp has not identified any change in the law or relevant new facts that warrant such relief. GTN argues that PacifiCorp "obscures the spoliation facts" and stresses that the facts have not changed—PacifiCorp refurbished or disposed of all but five of the fuel nozzles from the outages and all of the other turbine components GTN's experts need to determine cause. *Id.* at 12.

Second, GTN contends that, contrary to PacifiCorp's argument, the court applied the

Page 5 - OPINION AND ORDER

correct standard when it imposed sanctions. GTN notes that the court did not dismiss any claims but, rather, limited the evidence PacifiCorp could present in support of its one breach-of-contract claim. Even if the court's sanction is the equivalent of a dismissal, however, GTN argues that the court applied the correct standard because it found that PacifiCorp acted willfully and no lesser sanction was appropriate under the circumstances. Indeed, GTN notes that, even if a finding of bad faith were required, the court has previously found PacifiCorp acted with "improper motives" in the court's award of attorneys' fees to Northwest. *Id.* at 17 (citation omitted) (internal quotation mark omitted).

Third, GTN argues that the court did not err in finding that GTN was substantially prejudiced by PacifiCorp's destruction of the turbine components. GTN maintains that it cannot rule out all causes, including a design flaw, without being able to inspect the damaged parts. Moreover, GTN argues that, even if Dr. Kemal was "willing to opine on mechanical failures without examining actual components and speculate on destroyed evidence, GTN should [not] be required to do the same." *Id.* at 19. GTN maintains that photographic evidence, which the court has already found to be unreliable, and the five fuel nozzles, which PacifiCorp itself selected, are an inadequate substitute for the destroyed turbine components.

Fourth, GTN claims that its recently disclosed documents that PacifiCorp relies on do not alter the court's earlier analysis. GTN contends that the documents do nothing more than "acknowledg[e] that compressor oil was in the pipeline at some point"—a position that GTN claims it has consistently taken throughout litigation. *Id.* at 13-14. GTN argues that the critical issue in this case is not the compressor oil but, rather, the scrubber. If the scrubber were working, no compressor oil would have gotten through to the turbines. If, on the other hand, the

Page 6 - OPINION AND ORDER

scrubber were not working, then PacifiCorp would be the liable party. Moreover, GTN states that the email communications PacifiCorp relies on must be viewed in context. That is, GTN employees were relying on statements made by Hermiston Plant employees and the communications are merely evidence that GTN was attempting to work with the Hermiston Plant to address the problem the plant was experiencing. Even if GTN employees believed that compressor oil was the problem at the time, "that would not relieve PacifiCorp's obligation to preserve the very turbine components for which it seeks to recover in this case." *Id.* at 18.

### C.    Analysis

After carefully considering PacifiCorp's arguments, I conclude that exclusion of expert testimony regarding the cause of the August and September 2007 outages is still the appropriate sanction under the circumstances of this case. As set forth below, I find that I applied the correct legal standard, I maintain that GTN suffered substantial prejudice as a result of the spoliation, and I find that I did not rest my decision on incorrect assumptions.

### 1.    Standard

First, PacifiCorp argues that I applied an incorrect legal standard because dismissal of a claim is unwarranted absent evidence of bad faith. I disagree that I applied an incorrect standard. As an initial matter, I did not dismiss PacifiCorp's breach-of-contract claim but, rather, limited the evidence it could present in support of such claim—that is, I excluded all expert testimony concerning the parts damaged in August and September 2007 and the cause of those outages. July 16, 2012 Opinion and Order, #361, at 32; *see also id.* at 33 ("This ruling does not constitute an outright dismissal of PacifiCorp's breach of contract claim, but rather a limitation on the evidence PacifiCorp may introduce in support of that claim . . . ."). As a result of this ruling,

Page 7 - OPINION AND ORDER

there was "no genuine factual dispute for trial regarding whether GTN's conduct caused any damages flowing from the August and September outages." *Id.* at 47. PacifiCorp alleges a single breach-of-contract claim and, while I limited the evidence PacifiCorp could present in support of that claim—and, by virtue of such ruling, limited the damages PacifiCorp may seek—I did not dismiss PacifiCorp's claim in its entirety. PacifiCorp cites no authority suggesting the heightened requirement that applies when a court dismisses a claim also applies when the court merely limits the damages that the plaintiff may recover. *See Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368-69 (9th Cir. 1992) (upholding the district court's exclusion of expert testimony, which resulted in summary judgment in favor of the defendant, and noting that a finding of bad faith was unnecessary).

More importantly, the July 16, 2012 opinion gave PacifiCorp a great benefit by addressing each piece of destroyed evidence and its potential prejudice to GTN separately. Starting at page twenty-seven of the opinion, I carefully evaluated the prejudice caused by the destruction of turbine fuel nozzles, gas and liquid samples, the fuel gas scrubber, and other physical evidence separately and distinctly. It would have been easy instead to evaluate the overall effect of the spoliation in this case and fashion a much more severe remedy, perhaps to include outright dismissal of PacifiCorp's entire claim. In particular, I was presented with virtually uncontradicted and unexplained evidence that PacifiCorp destroyed the gas scrubber for Unit 2 in 2010, well after litigation in this case had been filed. If I had looked at PacifiCorp's destruction of the fuel nozzles in conjunction with its later conduct as to the scrubber, I could have easily justified a much more severe sanction than the one I imposed.

Thus, in light of the foregoing, I conclude that I did not apply an incorrect legal standard

when I precluded PacifiCorp from presenting expert testimony regarding the cause of the August and September 2007 outages.

### 2.    Prejudice

Second, PacifiCorp strenuously argues that GTN was not in fact prejudiced to the extent I found in the July 16, 2012 opinion. I find PacifiCorp's argument unavailing. First, PacifiCorp's suggestion that GTN can still investigate other causes of the August and September 2007 outages does not alter the fact that GTN is deprived of examining highly relevant evidence of the cause of the outages. Indeed, one of GTN's rebuttal experts, Dr. Meherwan P. Boyce, opines that, without an examination of the damaged components, including the turbine nozzles, "a full root cause analysis of the various failures [cannot] be performed." Expert Rebuttal Report of Dr. Meherwan P. Boyce, #331-2, at 15; *see also id.* at 23 ("As a forensic engineer, I do not think it is sound to base my opinion solely on photographs.").

Second, contrary to PacifiCorp's suggestion, I did not substitute my own opinion for that of PacifiCorp's expert witness. If Dr. Kemal were allowed to testify about the August and September 2007 outages and indicated that he properly relied on photographs, reports, and the five fuel nozzles from the second outage, nothing in the July 16, 2012 opinion would have limited his testimony. My opinion was based on the notion that PacifiCorp could not force GTN to rely on the same secondary evidence used by its expert and unilaterally destroy the original nozzles.

Third, with regard to PacifiCorp's argument that GTN was not prejudiced by the destruction of the components because GTN knew that there was significant oil in the pipeline, as evidenced by GTN's recently produced documents, I find such argument unpersuasive. The

Page 9 - OPINION AND ORDER

fact that initially GTN may have believed that compressor oil was the problem does not

somehow now prelude GTN from confirming or dispelling such belief by examining the turbine

components, including the fuel nozzles.

In sum, after reviewing the parties' arguments, I find no reason to disturb my earlier ruling

that GTN suffered substantial prejudice and that the exclusion of expert testimony regarding the

cause of the August and September 2007 outages was the appropriate remedy.

### 3.    Incorrect Assumptions

Finally, PacifiCorp argues that I incorrectly assumed that photographic evidence was an

insufficient basis for determining cause and that the photographs that GE employees took were

unreliable.  This is not a basis for reconsideration of the July 16, 2012 order.  PacifiCorp has

already argued that photographs are an adequate substitute for the physical evidence and I

rejected that argument on the basis that GTN should not be put in a position of relying on

photographs taken by plant employees and GE employees, particularly where GTN's expert

indicates that he does "not think it is sound to base [his] opinion solely on photographs."  Expert

Rebuttal Report of Dr. Meherwan P. Boyce, #331-2, at 23.  PacifiCorp raises nothing new in the

instant motion warranting reconsideration of that finding.  *See Kona Enters., Inc.*, 229 F.3d at

890 (noting that a court's authority to reconsider and amend its prior orders should "be used

sparingly in the interests of finality and conservation of judicial resources" (citation omitted)

(internal quotation mark omitted)).

### 4.    Summary

Based on the foregoing, I find no reason to modify my July 16, 2012 opinion and order

imposing sanctions.  Accordingly, I deny PacifiCorp's motion for reconsideration.

## II.     PacifiCorp's Motion for Sanctions

### A.     Standard

"The inherent powers of federal courts are those which are necessary to the exercise of all others, and include the well-acknowledged inherent power . . . to levy sanctions in response to abusive litigation practices." *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1338 (9th Cir. 1985), *quoting Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-65 (1980) (alteration in original) (internal quotation marks omitted).  This inherent power includes the power to dismiss an action "when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983); *see also Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989) ("[A] federal district judge can order dismissal or default where a litigant has stooped to the level of fraud on the court.").

### B.     Parties' Arguments

PacifiCorp argues that the court should impose sanctions against GTN because GTN has misrepresented facts through litigation.  Specifically, PacifiCorp contends that GTN's representations to the court are inconsistent with newly produced documents showing that GTN knew that there were significant amounts of oil in its pipeline, that hydrocarbon dropout was not an issue, and that compressor oil could pass through the filters at the Hermiston Meter Station without leaving stains.  Accordingly, PacifiCorp requests that the court "exercise its inherent authority to sanction GTN's deliberate deception by accepting what GTN internally acknowledged but improperly concealed—the turbine failures at the Hermiston Plant were 'due to oil, not native constituents of the natural gas.'"  PacifiCorp's Memo. in Support of Motion for

Reconsideration, #442, at 33 (citation omitted).

In response, GTN argues that PacifiCorp's request for sanctions should be denied. GTN argues that it has not misrepresented any facts to the court but, rather, has consistently maintained that it delivered gas that conformed to the quality required under GTN's tariff, which could include some oil. GTN notes that "PacifiCorp can present the privileged documents to the jury[,] which is free to evaluate the witnesses' responses and explanations—as well as their credibility—in order to adjudicate the dispute." GTN's Resistance to Motion for Reconsideration, #452, at 33.

### C.    Analysis

I disagree that sanctions are warranted under the circumstances. PacifiCorp has pointed to nothing indicating that GTN definitively knew that compressor oil was the cause of the damage; rather, the communications PacifiCorp relies on indicate only that early on it appears GTN believed that to be the case. I decline to hold GTN to its early hypothesis regarding the cause of the damage. PacifiCorp is, of course, free to cross-examine GTN's witnesses to demonstrate that GTN initially stated that compressor oil was the cause of the damage. Accordingly, I deny PacifiCorp's motion for sanctions.

### III.    GTN's Motion for Leave to Amend Answer

In its motion for leave to amend, GTN requests that the court permit GTN to file an amended answer adding two new affirmative defenses—that is, the alleged invalidity of HGC's purported assignment of claims and the allegation that PacifiCorp was the sole cause of the alleged damage. In addition, GTN seeks to add two counterclaims. The first is a claim for declaratory judgment, in which "GTN seeks a declaration that the assignment provided by HGC

to PacifiCorp is legally invalid, and that PacifiCorp cannot therefore bring claims against GTN based on the assignment," and "a declaration that it is entitled to indemnification from PacifiCorp under GTN's tariff."  GTN's Proposed First Amended Answer, Affirmative Defenses, and Original Counterclaims, #447-1, at 16, 17.  The second is a claim for indemnification arising out of PacifiCorp's alleged duty to indemnify GTN under GTN's tariff.  The remainder of the amendments "are simply to 'clean up' GTN's pleadings pursuant to the earlier rulings of the Court relating to GTN's previously-asserted affirmative defenses and the opinion issued by FERC."  GTN's Motion for Leave to Amend, #447, at 2.

As a threshold matter, the court must determine whether GTN filed its motion for leave to amend by the deadline set forth in the court's scheduling order.  If GTN filed the motion for leave to amend before the deadline established in the scheduling order, GTN need only satisfy the liberal standard set forth in Federal Rule of Civil Procedure 15(a).  However, if GTN filed the motion for leave to amend after the deadline established in the scheduling order, GTN must satisfy the more stringent standard under Federal Rule of Civil Procedure 16(b) as well as the Rule 15(a) standard.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992) (holding that, when a party requests leave to amend outside the time limit established in a scheduling order, the court must first determine whether Rule 16(b)'s good-cause standard is satisfied and then determine whether Rule 15(a)'s standard has been satisfied), *citing Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987); *see also O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154-55 (1st Cir. 2004) (noting that seven circuit courts of appeals, including the Ninth Circuit, "have held that Rule 16(b)'s 'good cause' standard, rather than Rule 15(a)'s 'freely given' standard, governs motions to amend filed after scheduling order deadlines").  Thus, the court

begins with a review of the applicable scheduling orders in this case.

On February 1, 2010, the court entered its standard discovery and pretrial scheduling order (#3). Pursuant to subsection (d) of the discovery and pretrial scheduling order, counsel were instructed to attempt to agree on a date by which to file amended pleadings and communicate the date to the court. The discovery and pretrial scheduling order further provides that, "[u]ntil the Court enters a subsequent scheduling order, the deadline [to file amended pleadings] will be 120 days from the date of this order." Discovery and Pretrial Scheduling Order, #3, at 4. On October 19, 2010, the court held a Rule 16 scheduling conference, at which time it reset various deadlines established in the discovery and pretrial scheduling order. Minutes of Rule 16 Conference, #71. The court, however, never reset the deadline to file amended pleadings. Thus, the deadline set forth in the court's discovery and pretrial scheduling order applies and motions for leave to amend were due June 1, 2010.

GTN filed the instant motion for leave to amend on July 19, 2013—well after the June 1, 2010 deadline. Accordingly, the court engages in the two-step process prescribed by *Johnson*. First, the court must determine whether GTN has satisfied Rule 16(b)'s good-cause standard. Second, assuming GTN is able to establish good cause, the court must determine whether amendment is warranted under Rule 15(a).

A.    **Rule 16(b)**

1.    **Standard**

Rule 16(b) requires district courts to issue a scheduling order in each case, other than those excluded by local rule. The scheduling order must limit the time to "join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). Once

Page 14 - OPINION AND ORDER

issued, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The focus of the good-cause inquiry under Rule 16(b) is whether the party requesting an extension demonstrates that, despite its diligence, the deadline set forth in the scheduling order cannot reasonably be met. Fed. R. Civ. P. 16 advisory committee's note; *see also In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."), *citing Johnson*, 975 F.2d at 609 (internal quotation mark omitted). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson*, 975 F.2d at 609. If the party requesting the modification "was not diligent, the inquiry should end." *Id.*

In determining whether a party acted diligently, district courts may consider the following three factors: (1) whether the party "was diligent in assisting the Court in creating a workable Rule 16 order"; (2) whether the party's "noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding [its] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference"; and (3) the party "was diligent in seeking amendment of the Rule 16 order, once it became apparent that [the party] could not comply with the order." *Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1072-73 (D. Or. 2010), *quoting Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (internal quotation marks omitted).

## 2.    Analysis

GTN has failed to establish good cause warranting exception to the scheduling order for

two reasons. First, GTN was not diligent in assisting the court with creating a workable scheduling order because it never requested that the court extend the deadline set forth in the court's standard discovery and pretrial scheduling order filed on February 1, 2010. The court's standard discovery and pretrial scheduling order instructed the parties to propose a new deadline that the court could incorporate in its Rule 16 scheduling order. Yet there is no indication in the record that GTN asked the court to extend the deadline to file amended pleadings—a deadline that had already passed by the time of the Rule 16 conference. Had GTN made such a request at the Rule 16 conference, I would have been receptive to changing the deadline.

Second, GTN was not diligent in seeking to amend the scheduling order. Even though GTN may not have been able to comply with the deadline in the scheduling order, GTN offers no persuasive reason for why it waited until now—after the close of discovery and after the filing of dispositive motions—to seek leave to amend its answer. GTN suggests that its delay is attributable to the fact that the court stayed the proceedings for approximately nine months while awaiting FERC's decision. However, GTN also repeatedly stresses that its proposed amendments are based on evidence obtained through discovery, which was (largely) closed in September 2011—approximately ten months before the case was stayed. If GTN had moved shortly after the close of discovery to extend the deadline for amending pleadings, I would have been receptive to such a motion, particularly in light of the fact that I had not extended the relatively short deadline established in the standard discovery and pretrial scheduling order. GTN, however, took no action until now—two years after discovery closed—to file its request to amend its answer. Given this unexplained delay, I cannot find that GTN was diligent.

In light of the foregoing, I conclude that GTN has not established good cause warranting

Page 16 - OPINION AND ORDER

an extension of the deadline to amend pleadings.  Accordingly, I deny GTN's motion for leave to amend.

B.    **Rule 15(a)**

Even if I were to apply the more liberal standard under Rule 15(a), as GTN urges, I find that amendment is not appropriate.

1.    **Standard**

Under Rule 15(a), "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a); *see also Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) ("In general, a court should liberally allow a party to amend its pleading."). This policy in favor of amendment is "applied with extreme liberality." *Sonoma Cnty. Ass'n of Retired Emps.*, 708 F.3d at 1117, *quoting Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (internal quotation mark omitted).  The Ninth Circuit has cautioned that a court may

> decline to grant leave to amend only if there is strong evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc."

*Id.*, *quoting Foman v. Davis*, 371 U.S. 178, 182 (1962); *accord Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), *quoting Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

The five relevant considerations—undue delay, bad faith, failure to cure deficiencies by amendments previously allowed, undue prejudice, and futility—are not accorded equal weight. A party's delay in moving to amend, for instance, is relevant but not dispositive. *Lockheed*

*Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("Although delay is

not a dispositive factor in the amendment analysis, it is relevant, especially when no reason is

given for the delay." (citations omitted)); *see also Sonoma Cnty. Ass'n of Retired Emps.*, 708 F.3d

at 1118 ("'[T]he mere fact that an amendment is offered late in the case . . . is not enough to bar

it.'"), *quoting United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981) (second alteration in

original). The prejudice suffered by the opposing party, on the other hand, is entitled to the

greatest weight. *Sonoma Cnty. Ass'n of Retired Emps.*, 708 F.3d at 1117, *quoting Eminence

Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Likewise, a court may deny a

motion for leave to amend based solely on the futility of the proposed amendments. *U.S. ex rel.

Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001), *quoting Bonin v.

Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

### 2.    Parties' Arguments

In its motion for leave to amend, GTN argues that amendment is warranted under Rule

15(a). First, GTN contends that the proposed amendments will not prejudice PacifiCorp because

they merely "bring the pleadings in line with" the testimony of PacifiCorp's witnesses and any

additional work required of PacifiCorp will be minimal since PacifiCorp "has been aware of the

facts underlying GTN's proposed amendments since the initiation of this litigation and will not

need to conduct any significant further fact or expert discovery in order to respond." GTN's

Memo. in Support of Motion for Leave to Amend, #448, at 11. Second, GTN argues that its

proposed amendments will not cause undue delay because trial is not scheduled until March

2014. Moreover, GTN argues that its motion for leave to amend is not untimely because "the

bases for the new assertions arose during discovery" and the case was "stayed for nearly a year

pending FERC's resolution of matters within its primary jurisdiction." *Id.* Third, GTN argues

that its proposed amendments are not made in bad faith or with dilatory motive but, rather, "made

solely to bring the pleadings and claims in line with the evidence that has been obtained in

discovery." *Id.* at 12. Finally, GTN states that its amendments are not futile because "they state

colorable claims." *Id.*

  In response, PacifiCorp argues that GTN's motion for leave to amend should be denied

based on undue delay, prejudice, dilatory motive, and futility. First, with regard to GTN's

amendments relating to the invalidity of the assignment from HGC to PacifiCorp, PacifiCorp

contends that the amendment is futile because its payment of HGC's share of the repair costs did

not discharge or satisfy GTN's liability; rather, under the doctrine of subrogation, PacifiCorp is

entitled to recover HGC's share of the repair costs. PacifiCorp further argues that GTN was in

possession of the information it now relies on in support of its amendment for over two years but

inexplicably waited to seek leave to amend its answer. PacifiCorp also asserts that it will suffer

undue prejudice if the court were to permit GTN to amend its answer at this late stage in the

proceedings. Moreover, PacifiCorp suggests that GTN is acting with dilatory motive, as

evidenced by the fact that GTN reported it was trial-ready a few months ago "and it made no

mention of amendment as it proceeded through two years of discovery and motion practice fully

aware of the factual information underlying its amendments." PacifiCorp's Resistance to Motion

for Leave to Amend, #461, at 12.

  Second, with regard to GTN's amendments relating to indemnification, PacifiCorp argues

that the amendments are futile. Specifically, PacifiCorp contends that GTN is misinterpreting the

tariff provision regarding indemnification and that the provision applies only if PacifiCorp

negligently caused GTN to breach its contract by, for example, "deliver[ing] to GTN for

transportation to the Hermiston Plant [gas that] did not meet the gas quality requirements of

GTN's tariff." *Id.* at 14. PacifiCorp also argues that if GTN's interpretation of its tariff provision

is correct and the provision is "a unilateral prevailing-party attorney-fee provision," then the

provision violates Oregon law, "which requires that such fee provisions be reciprocal." *Id.* at 15,

*citing* Or. Rev. Stat. § 20.096(1). Moreover, PacifiCorp contends that the provision violates

FERC's policy "to reject tariff provisions which attempt to exculpate a pipeline from its own

negligence." *Id.* (citation omitted) (internal quotation mark omitted). Finally, PacifiCorp argues

that the amendments relating to indemnification are futile because there is no evidence that

PacifiCorp failed to comply with GE specifications; in other words, there is no evidence that

PacifiCorp was negligent. In addition to futility, PacifiCorp contends that GTN's delay in

moving to amend to add the indemnification claim would cause substantial prejudice because it

would require further fact discovery, expert discovery, motions practice, and a possible second

referral to FERC to determine if the provision violates FERC's policy.

Third, with regard to GTN's amendment relating to contribution, PacifiCorp contends that

the amendment is futile because the court previously dismissed GTN's contribution affirmative

defense on the basis that contribution is not a defense in a breach-of-contract action. Moreover,

PacifiCorp contends that GTN's undue delay in moving to amend, in combination with the

prejudice PacifiCorp would suffer, warrants denial of the motion to amend.

In its reply, GTN first argues that it did not delay in seeking amendment because the

"critical facts necessitating amendment did not come to light until discovery was conducted" and,

"[t]hen, this case was stayed for nearly a year while referred to FERC." GTN's Reply in Support

Page 20 - OPINION AND ORDER

of Motion for Leave to Amend, #471, at 4-5.  GTN also argues that the amendments will not

delay the proceedings because further discovery is not necessary and, contrary to PacifiCorp's

suggestion, another referral to FERC would not be necessary because the court is competent to

resolve the strictly legal issue of whether the indemnification provision violates FERC's policy.

Second, GTN argues that PacifiCorp will not be substantially prejudiced by the

amendments because GTN's position has been consistent throughout the litigation and, thus,

PacifiCorp cannot claim surprise.

Third, GTN argues that its proposed amendments are not futile.  Specifically, GTN argues

that its amendments relating to indemnification are not futile because PacifiCorp's negligence in

failing to have the proper fuel gas conditioning system in place is the cause of GTN's losses

incurred in this case and, under the plain language of the tariff, PacifiCorp as the "Shipper" must

indemnify GTN where GTN's liability, loss, or damage is the result of PacifiCorp's negligence.

GTN argues that such provision does not violate FERC's policy and, on the contrary, "FERC has

expressly endorsed tariff provisions" requiring a shipper to indemnify the pipeline for the

shipper's negligence. *Id.* at 9.  Moreover, GTN argues that, even if such a provision violated

Oregon law, "tariffs are treated as the equivalent of federal regulations and have the force of

federal law, [and, therefore,] state law cannot preempt the express provisions of a tariff." *Id.*

With regard to its amendment relating to contribution, GTN states that Oregon law does not

preclude such a claim; rather, it is a common-law claim that arises from the tariff.  Finally, with

regard to its amendment relating to the invalidity of the assignment, GTN against contends that

there is a legal basis for such a claim.  GTN maintains that PacifiCorp's payment to HGC

satisfied any claim HGC may have had, and, therefore, HGC's subsequent assignment of its

Page 21 - OPINION AND ORDER

claims to PacifiCorp was not valid because HGC had nothing to assign.

### 3.    Analysis

I find that, even under the liberal Rule 15(a) standard, GTN is not entitled to amend its answer. Although I share PacifiCorp's concerns regarding the viability of GTN's new defenses, I find it unnecessary to decide this motion on the basis of futility. Rather, I find it appropriate to deny leave to amend on the bases that GTN has unduly delayed in seeking leave to amend and that amendment at this late stage in the proceedings will substantially prejudice PacifiCorp.

First, although not a dispositive factor, GTN's unexplained delay is certainly relevant. As PacifiCorp notes in its resistance, GTN has been aware of the facts underlying its amendments since, at the latest, the close of fact discovery in September 2011—that is, two years ago. Rather than seeking leave to amend in 2011, however, GTN waited until after dispositive motions were filed and resolved and after a referral to FERC. *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) ("We have held that an eight month delay between the time of obtaining a relevant fact and seeking leave to amend is unreasonable."). Although GTN notes that this case was stayed pending FERC's decision regarding the proper interpretation of the tariff language, GTN offers no explanation for why it did not seek leave to amend prior to the referral. Nor does GTN offer any reason why it did not seek leave to amend as soon as the court lifted the stay. Indeed, in May 2013, GTN reported to this court that it was prepared to try this case in September or December 2013 without any suggestion that it wished to add defenses. *See* Ex. 18, PacifiCorp's Resistance to Motion for Leave to Amend, #462-18, at 1 ("GTN would really like to try this case this year, if at [all] possible . . . .").

Second, I find that PacifiCorp would suffer substantial prejudice if I were to grant leave

to amend.  Although GTN strenuously argues that its amendments would not require any further discovery, I am persuaded by PacifiCorp's arguments that at least some of the proposed amendments would warrant new discovery and, given the history of this case, would likely result in additional discovery disputes.  This would certainly cause PacifiCorp substantial prejudice. *See Lockheed Martin Corp.*, 194 F.3d at 986 ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint."); *see also Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) ("Prejudice and undue delay are inherent in an amendment asserted after the close of discovery and after dispositive motions have been filed, briefed, and decided.").  Even if further discovery were not needed, I find that PacifiCorp would still be prejudiced if I were to permit GTN to raise these new defenses now, just months before trial.  This case has been pending since 2010.  There has already been one round of dispositive motions and there is another dispositive motion fully briefed and awaiting oral argument.  Permitting GTN to add new defenses now would result in further motions and would inevitably delay this case, even more so than it already has been. *See Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (finding that the district court did not abuse its discretion in denying the plaintiff leave to amend where the defendant had already incurred substantial litigation costs and the plaintiff sought to add new theories that would inevitably put the defendant "through the time and expense of continued litigation" (citation omitted) (internal quotation mark omitted)).

Thus, in light of the foregoing, I find that GTN is not entitled to amend its answer to add the proposed affirmative defenses and counterclaims.  Accordingly, I deny GTN's motion for leave to amend.

Page 23 - OPINION AND ORDER

**CONCLUSION**

For the reasons discussed above, PacifiCorp's motion for reconsideration of the court's order imposing spoliation sanctions and motion for sanctions against GTN (#441) and GTN's motion for leave to file its first amended answer, affirmative defenses, and original counterclaims (#447) are denied.

Dated this 23rd day of December, 2013.

Honorable Paul Papak
United States Magistrate Judge

Page 24 - OPINION AND ORDER