IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PACIFICORP, an Oregon
corporation,

                    Plaintiff,                          3:10-cv-00099-PK

v.                                                      OPINION AND ORDER

GAS TRANSMISSION NORTHWEST
CORPORATION, a California
corporation,

                    Defendant.

_____

PAPAK, Magistrate Judge:

        Plaintiff PacifiCorp brings this action against defendant Gas Transmission Northwest

Corporation ("GTN") arising out of the alleged contamination of natural gas causing damage to

PacifiCorp's Hermiston power plant.  The matters before the court are: (1) GTN's second motion

for summary judgment (#478); and (2) PacifiCorp's motion for leave to file an amended

Page 1 - OPINION AND ORDER

complaint (#489). For the reasons set forth below, the motion for summary judgment and the motion for leave to file an amended complaint are denied.

## BACKGROUND

I previously outlined the relevant facts, viewed in the light most favorable to PacifiCorp, in the July 16, 2012 opinion and order, and I find it unnecessary to repeat them here. *See* July 16, 2012 Opinion and Order, #361, at 2-13; *see also* December 23, 2013 Opinion and Order, #499, at 2-3 (outlining the relevant procedural history following the July 16, 2012 opinion and order). At issue now is GTN's second motion for summary judgment, which GTN filed on October 30, 2013. On November 25, 2013, PacifiCorp filed a resistance (#493). On December 9, 2013, GTN filed a reply (#497).

PacifiCorp filed the motion for leave to file an amended complaint on November 14, 2013. On November 26, 2013, GTN filed a resistance (#496). On December 13, 2013, PacifiCorp filed a reply (#498). The matters are fully submitted and ready for decision.

## ANALYSIS

I.     **GTN's Motion for Summary Judgment**

A.     **Standard**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990).

## B.    Discussion

In its motion for summary judgment, GTN argues that the court should grant summary judgment in GTN's favor on three grounds. First, GTN argues that PacifiCorp has failed to generate a genuine issue of material fact regarding the presence of compressor oil in the Hermiston plant turbine. Second, GTN argues that it is entitled to summary judgment because the Hermiston plant was not operating in the ordinary course of business, as evidenced by its lack of industry-standard equipment such as a coalescing filter and heater. Finally, GTN argues that it is entitled to summary judgment on those claims that the Hermiston Generating Company, L.P. ("HGC") "assigned" to PacifiCorp because the assignment is invalid.

### 1.    Evidence of Compressor Oil

First, GTN moves for summary judgment on the ground that "PacifiCorp simply has no direct physical evidence of liquid compressor oil being present at the contractual delivery point or in the turbines at the [Hermiston] plant." GTN's Memo. in Support of Motion for Summary Judgment, #479, at 11. Specifically, GTN argues that PacifiCorp should not be allowed to rely on the "highly questionable" testimony of Frank Glasgow and Terry Journot because PacifiCorp failed to preserve the oil that Glasgow and Journot allegedly observed. *Id.* at 12. Moreover,

GTN contends that there is no evidence of "coking" that would support PacifiCorp's theory that compressor oil was the cause of the damage. Finally, GTN requests that the court reconsider its prior spoliation sanction and dismiss PacifiCorp's claim in its entirety based on recent district-court decisions.

### a.    Glasgow and Journot's Observations of Oil

Although GTN styles its motion as a motion for summary judgment, a substantial portion of the motion is, in essence, a request for spoliation sanctions. That is, GTN argues that "PacifiCorp should not be allowed to rely on [Glasgow and Journot's] prejudicial and unconfirmed testimony when the physical evidence that could have been used to disprove the testimony was willfully destroyed." *Id.* at 14. Specifically, GTN takes issue with Glasgow and Journot's testimony regarding six instances in which they observed oil either upstream or downstream of the fuel gas scrubbers. *See id.* at 12-14. Because PacifiCorp did not preserve samples of the oil, GTN contends that the court should not permit Glasgow and Journot to testify regarding their alleged observations of the oil.

In response, PacifiCorp argues that the disposal of the oil that Glasgow and Journot observed does not warrant a dismissal sanction. First, PacifiCorp argues that the court already resolved this issue in the July 16, 2012 opinion and order when it concluded that no sanction was appropriate for PacifiCorp's willful destruction of the gas samples McHale & Associates collected in August and October 2007. Second, PacifiCorp notes that GTN has its own oil samples from that period "that, for reasons known only to GTN, it destroyed or failed to produce." PacifiCorp's Resistance to GTN's Motion for Summary Judgment, #493, at 6. Third, PacifiCorp argues that, even if the court were to find that PacifiCorp willfully destroyed the oil

Page 4 - OPINION AND ORDER

that Glasgow and Journot observed, dismissal is not the appropriate sanction because there is no evidence that PacifiCorp "deliberately engaged in deceptive practices." *Id.* at 7.

In the July 16, 2012 opinion and order, I discussed at great length the standard applicable to motions for spoliation sanctions. *See* July 16, 2012 Opinion and Order, #361, at 22-23. Such sanctions include dismissal of claims, exclusion of evidence, and adverse jury instructions permitting a jury to draw an inference that the destroyed evidence would have been adverse to the party responsible for its destruction. *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368-70 (9th Cir. 1992). Before a court imposes the "harsh sanction" of dismissal, "the conduct to be sanctioned must be due to willfulness, fault, or bad faith." *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (citation omitted) (internal quotation marks omitted). Even when a court imposes a lesser evidentiary sanction than outright dismissal, it must find that the party willfully destroyed the evidence. *Unigard*, 982 F.2d at 368 & n.2; *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *see also Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991). A party's destruction of evidence is considered "willful" if the party "has some notice that the [evidence was] *potentially* relevant to the litigation before [it was] destroyed." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (citation omitted) (internal quotation marks omitted). Circuit courts describe the duty to preserve evidence as attaching when a party should know that evidence may be relevant to litigation that is "anticipated," or "reasonably foreseeable." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590, 591 (4th Cir. 2001) (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998), *and West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).

Thus, the first step in the spoliation analysis is to determine whether PacifiCorp's

destruction of the oil was willful—that is, whether PacifiCorp had a duty to preserve the oil that

Glasgow and Journot observed. In the July 16, 2012 opinion and order, I concluded that

litigation was reasonably foreseeable in this case as of August 2, 2007. *See* July 16, 2012

Opinion and Order, #361, at 26 ("Consequently, PacifiCorp was obligated to preserve any

potentially relevant evidence relating to gas quality litigation as of August 2, 2007."); *id.*

("Evidence that PacifiCorp destroyed before [August 2, 2007,] cannot form the basis for

spoliation sanctions."). In the instant motion, GTN notes that Glasgow and Journot claim in their

respective declarations that they observed oil either upstream or downstream of the scrubbers on

six different occasions. One such incident occurred sometime between January and July 2007.

*See* Declaration of Terry Journot ("Journot Declaration"), #256, ¶ 4 (noting that, sometime

between January and July 2007, he saw "roughly a gallon of oil pour out of the filter housing and

onto the ground"). As I previously found, PacifiCorp was under no duty to preserve evidence

prior to August 2, 2007. Thus, PacifiCorp's failure to preserve the oil that Journot observed

sometime between January and July 2007 was not willful and cannot form the basis of a

spoliation sanction.

    The second incident that GTN identifies occurred in September 2007. *See* Declaration of

Francis Glasgow ("Glasgow Declaration"), #257, ¶ 10 ("In September 2007, I . . . saw oil pooled

in the bottom of Cascade's filter housing at the [Hermiston plant]."). Although Glasgow took

photographs of the oil, he apparently did not keep a sample of the oil he claims he saw. *See id.*

(noting that he took photographs of the inside of the Cascade filter housing); *see also* Ex. 3,

Glasgow Declaration, #257-3, at 1 (photographs). In its resistance, PacifiCorp does not contest

that the oil Glasgow allegedly observed in September 2007 is highly relevant. Accordingly, I

conclude that PacifiCorp's disposal of such oil was willful.

It is unclear whether the remaining four incidents occurred before or after August 2, 2007. Journot and Glasgow's declarations do not identify a specific month during which they allegedly observed the oil but, rather, only state that it was sometime in 2007. *See* Journot Declaration, #256, ¶ 5 ("During an inspection and cleaning of the gas lines at the [Hermiston plant] in 2007, I saw oil in the plant piping and the turbine equipment for Unit 2, including the pigtails and headers. Oil poured out of the headers."); Glasgow Declaration, #257, ¶ 5 ("[D]uring my investigation, I found oil in our 'witch's hat' filter . . . ."); Glasgow Declaration, #257, ¶ 6 ("I . . . saw oil dripping from the gas metering orifice, which is located between the scrubber and the witch's hat filter."); Glasgow Declaration, #257, ¶ 7 ("[D]uring my investigation, I saw oil dripping out of 'pigtails' immediately upstream from the gas turbine fuel nozzles. The inside of the pigtails were also coated with oil."). Because it does not change my analysis, I will assume that these incidents occurred after August 2, 2007. PacifiCorp does not contest that the oil Glasgow and Journot observed is highly relevant and, thus, I conclude that PacifiCorp's failure to preserve the oil was willful.

Having found that PacifiCorp's disposal of the oil that Glasgow and Journot observed on five separate occasions was willful, I turn now to consider the prejudice to GTN. GTN strenuously argues that, without samples of the oil Glasgow and Journot observed, it has no means of defending against Glasgow and Journot's testimony that they observed oil near the turbines—testimony critical to PacifiCorp's case. I disagree. The prejudice to GTN is not sufficient to justify dismissal for two reasons. First, as I noted in the July 16, 2012 opinion and order, "GTN apparently has its own samples from the period in question." July 16, 2012 Opinion

Page 7 - OPINION AND ORDER

and Order, #361, at 36; *see also* PacifiCorp's Resistance to GTN's Motion for Summary

Judgment, #493, at 6 (citing evidence that GTN collected oil from, among other locations, the

gas scrubber). Thus, while PacifiCorp may have disposed of the oil that Glasgow and Journot

observed on five specific occasions, GTN was not entirely without oil samples to test. Second,

GTN is free to cross-examine Glasgow and Journot regarding what they observed, including the

fact that they did not preserve or test the substance that they saw.[1]  Accordingly, I find that

dismissal is not warranted as a spoliation sanction under the circumstances.

### b.    Evidence of "Coking"

GTN also argues that PacifiCorp has failed to present any evidence of "coking" to support

its theory that compressor oil collected and ignited in the fuel nozzles.  GTN contends that Dr.

Abid Kemal's opinion that there was evidence of coking is "pure speculation and highly

prejudicial to GTN" and Journot's observation of carbon deposits is similarly "pure speculation."

GTN's Memo. in Support of Motion for Summary Judgment, #479, at 15.  GTN further notes

that, as a result of PacifiCorp's spoliation, GTN's experts cannot analyze the turbine components

to refute PacifiCorp's claim that there was coking.

I find GTN's arguments unavailing.  At the summary-judgment stage, the court may not

make credibility determinations or weigh the evidence. *See, e.g., Reeves*, 530 U.S. at 150; *Lytle*,

---

[1]  At oral argument, GTN also argued that the court erred when it held in the July 16,
2012 opinion and order that Glasgow and Journot are competent to offer lay testimony under
Federal Rule of Evidence 701 that they observed a substance they identified as oil. *See* July 16,
2012 Opinion and Order, #361, at 43 n.15.  I find no basis, and GTN does not identify any basis,
for reconsidering that conclusion. *See* Fed. R. Evid. 701; *see also United States v. Durham*, 464
F.3d 976, 982 (9th Cir. 2006) (finding that the district court did not err in admitting a lay
witness's opinion that a substance was marijuana based on the witness's personal experience with
marijuana).

494 U.S. at 554-55; *see also* July 16, 2012 Opinion and Order, #361, at 47 (finding GTN's argument that Dr. Kemal cannot establish causation did not warrant summary judgment because such "concern goes either to the reliability of [Dr.] Kemal's testimony under [Federal Rule of Evidence] 702 or to the weight of his testimony, both trial issues").  To the extent GTN is requesting further spoliation sanctions based on PacifiCorp's destruction of the turbine components, I decline to do so, as discussed next.

### c.   Request for Reconsideration

GTN next asks the court to reconsider its prior spoliation sanctions based on recent district-court rulings.  Specifically, GTN argues that the decisions in *Woodard v. Ford Motor Co.*, No. 1:11-cv-3092-CL, 2013 WL 3024828 (D. Or. June 13, 2013), *Erlandson v. Ford Motor Co.*, No. 08-CV-1137-BR, 2009 WL 3672898 (D. Or. Oct. 30, 2009), and *Azad v. Goodyear Tire & Rubber Co.*, No. 2:11-CV-00290-KJD-GWF, 2013 WL 593913 (D. Nev. Feb. 14, 2013), establish that, "when the destroyed evidence is so central to the case that the prejudice to the defendant is overwhelming," dismissal is the appropriate sanction.  GTN's Memo. in Support of Motion for Summary Judgment, #479, at 17.  GTN maintains that, in this case, the destruction of oil samples, the scrubbers, and "other critical turbine parts . . . deprives GTN of the fundamental ability to have a fair trial."  *Id.* at 15-16.  PacifiCorp responds that Ninth Circuit precedent does not support a dismissal sanction because there is no evidence that PacifiCorp "deliberately engaged in deceptive practices."  PacifiCorp's Resistance to GTN's Motion for Summary Judgment, #493, at 7.  Moreover, PacifiCorp argues that the cases GTN relies on—*Woodard*, *Erlandson*, and *Azad*—are factually distinguishable.

"'As long as a district court has jurisdiction over [a] case, then it possesses the inherent

procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to

be sufficient.'" *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir.

2001) (emphasis omitted) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981));

*see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that

adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does

not end the action as to any of the claims or parties and may be revised at any time before the

entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").  A court

should reconsider its earlier decision if it "(1) is presented with newly discovered evidence, (2)

committed clear error or the initial decision was manifestly unjust, or (3) if there is an

intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th

Cir. 1993); *accord Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th

Cir. 1989); *see also Am. Rivers v. NOAA Fisheries*, No. CV-04-00061-RE, 2006 WL 1983178, at

*2 (D. Or. July 14, 2006) (discussing motions to reconsider under Rule 54(b) and noting that

district courts generally apply the same standards as those used in motions under Rule 59(e) and

Rule 60(b)).  The court's exercise of its inherent authority to amend its prior orders is "an

extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial

resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation

omitted) (internal quotation marks omitted).

In this case, GTN has not identified any valid basis for reconsidering my prior decision.

While GTN discusses at great length the prejudice it has suffered as a result of PacifiCorp's

destruction of relevant evidence, I previously considered the prejudice to GTN when I fashioned

appropriate sanctions.  Indeed, I reconsidered the appropriateness of those sanctions just a few

months ago at PacifiCorp's request. The cases that GTN cites in support of the instant motion are not controlling and, in any case, I agree with PacifiCorp that they are factually distinguishable. In short, GTN states nothing new in support of the motion that would warrant reconsideration of my earlier order. *See id.* at 890 (noting that a court's authority to reconsider and amend its prior orders should "be used sparingly in the interests of finality and conservation of judicial resources" (citation omitted) (internal quotation mark omitted)).

### d.    Genuine Issue of Material Fact

In the July 16, 2012 opinion and order, I concluded that there were questions of fact regarding whether GTN's gas contained compressor oil and whether that compressor oil reached the Unit 2 turbine prior to the outages. *See* July 16, 2012 Opinion and Order, #361, at 42-43. Specifically, I noted:

> Core Laboratory and Texas Oil Tech testing indicated that liquid removed from the GTN pipeline, the Stanfield exchange, the Cascade line, the plant's Unit 2 scrubber and other locations in the plant were consistent with compressor oil, even if the liquid taken from Stanfield and the plant were dissimilar. PacifiCorp's expert Ben Asante opined that the liquid discovered in the plant was compressor oil rather than the product of condensation or glycol, the two other main sources of liquid contamination in gas pipeline systems. Glasgow reported seeing oil while sampling gas at Stanfield and on the pigs that cleaned the Cascade line, while Journot observed oil at the end of the Cascade line where it fed into the plant. And Glasgow and Journot both observed what they described as oil in various turbine parts downstream of the Unit 2 scrubber. Finally, there is testimony that any liquid arriving at the plant necessarily came through the GTN pipeline. Even without considering the challenged testimony from Journot, Glasgow, and others that they observed 'coking' in damaged turbine nozzles indicative of oil contamination, a reasonable jury could infer that compressor oil in the gas delivered by GTN found its way to the Unit 2 turbine throughout the period of the forced outages.

*Id.* at 43 (citations omitted) (footnote omitted).  Nothing GTN states in the instant motion alters this prior conclusion.  Accordingly, I deny GTN's motion for summary judgment to the extent GTN argues that PacifiCorp fails to present any admissible evidence that compressor oil reached the Hermiston plant turbine.

### 2.    Ordinary Course of Business

Second, GTN moves for summary judgment on the ground that PacifiCorp cannot satisfy its burden to "prove that GTN delivered gas containing compressor oil in sufficient quantities to interfere with commercial use in the 'ordinary course of business.'"  GTN's Memo. in Support of Motion for Summary Judgment, #479, at 21.  Specifically, GTN argues that the Hermiston plant lacked industry-standard equipment, including coalescing filters and heaters, in 2007.  Because PacifiCorp was not operating in the "ordinary course of business," GTN contends that PacifiCorp cannot establish that GTN breached its contract and, thus, GTN is entitled to summary judgment.  In response, PacifiCorp argues that there is "ample evidence to show that the Hermiston [p]lant was operating in the ordinary course of business."  PacifiCorp's Resistance to GTN's Motion for Summary Judgment, #493, at 12.  PacifiCorp argues that various individuals, including David Balevic, Dana Crafts, and Dr. Peter A. Sobieski, have testified or reported that the gas-conditioning equipment at the Hermiston plant was adequate.

As an initial matter, I take issue with GTN's suggestion that, under the Federal Energy Regulatory Commission's ("FERC") interpretation of the relevant tariff provision, PacifiCorp must prove that it was operating in the ordinary course of business.  The only remaining claim in this case is a claim for breach of contract.  To prevail, PacifiCorp must prove that GTN delivered gas to the Hermiston Meter Station that did not conform with the quality requirements under

Page 12 - OPINION AND ORDER

GTN's tariff.  Under FERC's interpretation of the relevant tariff provision, such gas could include

"substances, such as compressor oil, so long as these substances are in quantities that do not

interfere with the commercial utilization of the natural gas in the ordinary course of business."

Ex. 1, Declaration of Worthy Walker, #480-1, at 6.  Thus, the relevant inquiries are whether

GTN delivered natural gas containing compressor oil and, if so, whether the compressor oil was

in such quantities that it would have interfered with the commercial utilization of the gas in the

ordinary course of business.  While PacifiCorp's alleged failure to comply with industry

standards may be relevant to, for example, GTN's Sixth Affirmative Defense, which alleges that

PacifiCorp is precluded from relief under the *in pari delicto* doctrine, it does not relieve GTN of

its contractual obligation to deliver gas of a certain quality.

　　　　In any case, PacifiCorp has presented sufficient evidence to generate a genuine issue of

material fact as to whether the Hermiston plant had adequate gas-conditioning equipment

installed at the time of the outages.  While GTN claims in its reply that the testimony of

PacifiCorp's expert, Dr. Sobieski, "is simply not credible," GTN's Reply in Support of Motion for

Summary Judgment, #497, at 12, I cannot make credibility determinations or weigh the evidence

at the summary-judgment stage.  *See, e.g., Reeves*, 530 U.S. at 150; *Lytle*, 494 U.S. at 554-55.

Accordingly, I deny GTN's motion for summary judgment to the extent GTN argues it is entitled

to summary judgment on this basis.

### 3.    HGC's Assignment of Claims

　　　　Finally, GTN requests that the court grant summary judgment on those claims that HGC

"assigned" to PacifiCorp because the assignment is invalid.  GTN notes that PacifiCorp paid

HGC for HGC's share of the repair costs no later than April 2009 and that these payments

Page 13 - OPINION AND ORDER

satisfied any claim HGC may have had.  Thus, HGC's subsequent assignment of its claims to

PacifiCorp in December 2009 was not valid because HGC had nothing to assign.

In response, PacifiCorp argues that the assignment is valid.  Specifically, PacifiCorp

points to the Ownership and Operating Agreement between PacifiCorp and HGC, which is dated

December 30, 1998.  Under the Ownership and Operating Agreement, PacifiCorp is "obligated to

cover losses or damages that were caused in connection with the agreements governing the

delivery of natural gas to the Hermiston [p]lant."  PacifiCorp's Resistance to GTN's Motion for

Summary Judgment, #493, at 13 (citing Ex. 2, Declaration of Brian T. Sniffen ("Sniffen

Declaration"), #462-2, § 14.03).  PacifiCorp further notes that, on September 19, 2007, HGC

wrote a letter to PacifiCorp, alerting PacifiCorp of its duty to indemnify HGC for HGC's share of

the repair costs pursuant to the Ownership and Operating Agreement:

> A . . . consequence of HGC's recent determination of the cause of
> the Forced Outages is the application of Section 14.03 of the
> [Ownership and Operating] Agreement, which section makes clear
> HGC is entitled to indemnity from PacifiCorp for any losses or
> costs arising under the Fuel Agreements following the Transition
> Date.  The portion of repair costs initially allocated to and paid for
> by HGC (50%) (the other 50% having been allocated to
> PacifiCorp) for all four Incidents are subject to full reimbursement
> by PacifiCorp.  In turn, PacifiCorp has the sole right to seek
> indemnity for all such expense from the Fuel Gas suppliers and/or
> the Fuel Gas transmission companies under either the Existing Fuel
> Agreements and/or the New Fuel Agreements.

Ex. 3, Sniffen Declaration, #462-3, at 3.  Thus, PacifiCorp argues that the Ownership and

Operating Agreement and the September 19, 2007 letter create a valid assignment and "[t]he

later-executed assignment simply reaffirmed PacifiCorp's right to assert HGC's claims against

GTN."  PacifiCorp's Resistance to GTN's Motion for Summary Judgment, #493, at 14.

Alternatively, PacifiCorp argues that, even if the assignment is not valid, PacifiCorp may still sue GTN for HGC's share of the repair costs under the equitable doctrine of subrogation. Although PacifiCorp notes that it did not plead equitable subrogation in its complaint, it asserts that it should be allowed to amend its complaint to add such a claim under the circumstances of this case.

I agree with PacifiCorp that HGC validly assigned its claims for repair costs to PacifiCorp no later than September 2007—prior to PacifiCorp making any payments to HGC. Oregon courts define an assignment as "[a] present and binding appropriation of an interest in a specific fund." *Wittmayer v. Edwards*, 781 P.2d 866, 868 (Or. Ct. App. 1989). An assignment "'may be oral or written and no special form is necessary provided that the transfer is clearly intended as a present assignment of the interest held by the assignor.'" *Id.* (quoting *Anderson v. Dep't of Justice*, 588 P.2d 1295, 1297 (Or. Ct. App. 1979)). Here, HGC made clear in the September 19, 2007 letter that, under the Ownership and Operating Agreement, PacifiCorp had an obligation to pay for HGC's share of the repair costs and, "[i]n turn, PacifiCorp [had] the sole right to seek indemnity for all such expense from the Fuel Gas suppliers and/or the Fuel Gas transmission companies under either the Existing Fuel Agreements and/or the New Fuel Agreements." Ex. 3, Sniffen Declaration, #462-3, at 3. I find that this was sufficient to create a valid assignment.

Even if I were to find that the assignment is not valid, I would nevertheless allow PacifiCorp to seek the repair costs from GTN under the equitable doctrine of subrogation. *See Koch v. Spann*, 92 P.3d 146, 148 (Or. Ct. App. 2004) ("Subrogation is an equitable doctrine that is based on a theory of restitution and unjust enrichment. It enables a secondarily liable party who has been compelled to pay debt to be made whole by collecting that debt from the primarily

liable party who, in good conscience, should be required to pay." (citation omitted)).  PacifiCorp

acquired the right to sue GTN for HGC's portion of the repair costs the moment that PacifiCorp

paid HGC for those repair costs; the fact that HGC and PacifiCorp later formalized this

arrangement in the form of an assignment is without consequence.  While GTN complains that

PacifiCorp failed to plead a right to subrogation, I find that GTN would not be prejudiced if I

were to allow PacifiCorp to amend its complaint to add such an allegation now.  GTN can hardly

claim surprise, as it has been aware that PacifiCorp is seeking HGC's portion of the repair costs

since the beginning of the lawsuit.  Indeed, in its prior motion for spoliation sanctions, GTN

vigorously argued that "PacifiCorp stands in the shoes of HGC" by virtue of HGC's assignment

of its claims—a position that I adopted in the July 16, 2012 opinion and order.  July 16, 2012

Opinion and Order, #361, at 24 n.6.  Accordingly, even if I were to find that the assignment is

invalid, I would permit PacifiCorp to amend its complaint to plead a right to subrogation.

        In light of the foregoing, I deny GTN's motion for summary judgment to the extent it

seeks summary judgment on those claims HGC assigned to PacifiCorp.[2]

## II.     PacifiCorp's Motion for Leave to File Amended Complaint

        In its motion, PacifiCorp requests leave to file a second amended complaint adding a

request for prejudgment interest.  Specifically, PacifiCorp seeks to add the following language:

"Pursuant to ORS 82.010, PacifiCorp is entitled to prejudgment interest on all of its damages,

which are readily ascertainable."  PacifiCorp's Proposed Second Amended Complaint, #491-2, at

---

[2] In addition, I find that GTN waived its invalid-assignment defense.  "Federal Rule of
Civil Procedure 8(c) requires defendants to plead affirmative defenses in answer to [a] plaintiff's
complaint.  Defenses not so raised are waived."  *Taylor v. United States*, 821 F.2d 1428, 1432
(9th Cir. 1987).  In this case, GTN failed to timely plead an invalid-assignment affirmative
defense and, thus, such defense is waived.

7; *see also id.* at 8. PacifiCorp argues that the amendment is warranted because GTN will suffer no prejudice as GTN has been aware since at least October 7, 2011, that PacifiCorp is seeking prejudgment interest. PacifiCorp notes that GTN previously moved for summary judgment on PacifiCorp's request for prejudgment interest and, although the court ultimately found the request was not properly pled, both parties have already briefed PacifiCorp's substantive entitlement to prejudgment interest. Moreover, PacifiCorp argues that its request for leave to amend will not cause undue delay, its proposed amendment is made in good faith, and its proposed amendment is not futile.

In response, GTN argues that the court should deny PacifiCorp's motion on the basis of delay, particularly in light of the court's recent denial of GTN's motion for leave to amend. GTN further contends that it will suffer prejudice if the court permits PacifiCorp to add a request for prejudgment interest now, as "a prejudgment interest claim was *never* the subject of proper discovery in this case, because it was never properly [pled]." GTN's Resistance to PacifiCorp's Motion for Leave to File Amended Complaint, #496, at 5. Finally, GTN argues that PacifiCorp's proposed amendment is futile because it does not adequately plead an entitlement to prejudgment interest, as required under Oregon law, and, furthermore, prejudgment interest is not recoverable in this case because the damages are not easily ascertainable.

A.    **Standards**

1.    **Rule 16(b)**

Federal Rule of Civil Procedure 16(b) requires district courts to issue a scheduling order in each case, other than those excluded by local rule. The scheduling order must limit the time to "join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P.

Page 17 - OPINION AND ORDER

16(b)(3)(A). Once issued, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The focus of the good-cause inquiry under Rule 16(b) is whether the party requesting an extension demonstrates that, despite its diligence, the deadline set forth in the scheduling order cannot reasonably be met. Fed. R. Civ. P. 16 advisory committee's note; *see also In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (internal quotation mark omitted)). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson*, 975 F.2d at 609. If the party requesting the modification "was not diligent, the inquiry should end." *Id.*

In determining whether a party acted diligently, district courts may consider the following three factors: (1) whether the party "was diligent in assisting the Court in creating a workable Rule 16 order"; (2) whether the party's "noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding [its] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference"; and (3) whether the party "was diligent in seeking amendment of the Rule 16 order, once it became apparent that [the party] could not comply with the order." *Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1072-73 (D. Or. 2010) (quoting *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999)) (internal quotation marks omitted).

/ / /

Page 18 - OPINION AND ORDER

### 2.      Rule 15(a)

Under Federal Rule of Civil Procedure 15(a), "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a); *see also Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) ("In general, a court should liberally allow a party to amend its pleading."). This policy in favor of amendment is "applied with extreme liberality." *Sonoma Cnty. Ass'n of Retired Emps.*, 708 F.3d at 1117 (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)) (internal quotation mark omitted). The Ninth Circuit has cautioned that a court may

> decline to grant leave to amend only if there is strong evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc."

*Id.* (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *accord Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (quoting *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)).

The five relevant considerations—undue delay, bad faith, failure to cure deficiencies by amendments previously allowed, undue prejudice, and futility—are not accorded equal weight. A party's delay in moving to amend, for instance, is relevant but not dispositive. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("Although delay is not a dispositive factor in the amendment analysis, it is relevant, especially when no reason is given for the delay." (citations omitted)); *see also Sonoma Cnty. Ass'n of Retired Emps.*, 708 F.3d at 1118 ("'[T]he mere fact that an amendment is offered late in the case . . . is not enough to bar it.'" (second alteration in original) (quoting *United States v. Webb*, 655 F.2d 977, 980 (9th Cir.

1981))).  The prejudice suffered by the opposing party, on the other hand, is entitled to the greatest weight.  *Sonoma Cnty. Ass'n of Retired Emps.*, 708 F.3d at 1117 (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).  Likewise, a court may deny a motion for leave to amend based solely on the futility of the proposed amendments.  *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)).

### B.    Discussion

I find that PacifiCorp is not entitled to amend its complaint.  First, in the December 23, 2013 opinion and order addressing GTN's motion for leave to file an amended answer, I found that motions for leave to amend were due June 1, 2010.  *See* December 23, 2013 Opinion and Order, #499, at 14 (reviewing the applicable scheduling orders in the case and concluding that the court never reset the deadline to file amended pleadings and, thus, the deadline set forth in the court's standard discovery and pretrial scheduling order applies).  Because PacifiCorp filed the instant motion for leave to amend on November 14, 2013—nearly three-and-a-half years after the deadline—PacifiCorp must satisfy the more stringent standard under Rule 16(b) as well as the Rule 15(a) standard.  *See Johnson*, 975 F.2d at 607-08 (holding that, when a party requests leave to amend outside the time limit established in a scheduling order, the court must first determine whether Rule 16(b)'s good-cause standard is satisfied and then determine whether Rule 15(a)'s standard is satisfied (citing *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987))); *see also O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154-55 (1st Cir. 2004) (noting that seven circuit courts of appeals, including the Ninth Circuit, "have held that Rule 16(b)'s 'good cause' standard, rather than Rule 15(a)'s 'freely given' standard, governs motions to amend filed after scheduling

order deadlines"). PacifiCorp makes no attempt to establish good cause warranting exception to the scheduling order. Most troubling is PacifiCorp's failure to demonstrate that it diligently sought amendment of the scheduling order. PacifiCorp was aware as of July 16, 2012, that it did not comply with Oregon law's requirement to plead a request for prejudgment interest. *See* July 16, 2012 Opinion and Order, #361, at 50. Yet, PacifiCorp waited until November 14, 2013, to request leave to file an amended complaint. Given this unexplained delay, I cannot find that PacifiCorp was diligent in seeking an extension of the deadline for filing amended pleadings.

Even if I were to apply the more lenient Rule 15(a) standard, I would still find that amendment is not warranted. First, although not dispositve, PacifiCorp's three-and-a-half-year delay in seeking leave to amend is certainly relevant. *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) ("We have held that an eight month delay between the time of obtaining a relevant fact and seeking leave to amend is unreasonable."). While I note that this case was stayed pending FERC's decision regarding the proper interpretation of the tariff language, nothing prevented PacifiCorp from seeking leave to amend while awaiting FERC's decision. Indeed, I note that PacifiCorp continued to seek discovery while the case was stayed. *See, e.g.*, PacifiCorp's Motion to Compel, #366 (requesting that the court compel GTN to produce documents that the court had concluded were subject to discovery in the July 16, 2012 opinion and order). Moreover, PacifiCorp offers no reason why it did not seek leave to amend as soon as the court lifted the stay.

Second, and most significant, PacifiCorp's proposed amendment is either futile or unnecessary, depending on a conflict-of-law question I need not resolve for the purposes of this motion. Specifically, there is a question as to whether Oregon law or federal law governs the

Page 21 - OPINION AND ORDER

adequacy of PacifiCorp's request for prejudgment interest.  Although PacifiCorp maintains that it need not plead its entitlement to prejudgment interest because federal pleading requirements apply, neither party fully addressed this conflict-of-law issue and I find it unnecessary to decide it now.[3]  If federal law applies, as PacifiCorp urges, PacifiCorp need not plead a claim for prejudgment interest and, thus, any amendment of the complaint is unnecessary.  *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.  Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."); *Consolidated Cigar Co. v. Tex. Commerce Bank*, 749 F.2d 1169, 1175 (5th Cir. 1985) (finding that "there is no requirement for a specific pleading for prejudgment interest" under the Federal Rules of Civil Procedure); *W.R. Huff Asset Mgmt. Co. v. William Soroka 1989 Trust*, Civ. Action No. 04-3093 (KSH), 2009 WL 2436692, at *2 (D.N.J. Aug. 6, 2009) ("The Court is satisfied that a party's failure to assert a demand for prejudgment interest in a pleading is ultimately trumped by Rule 54(c) if such an award would provide the relief to which a party is otherwise entitled.").

If, on the other hand, Oregon law applies, I find that PacifiCorp's proposed amendment is futile because it fails to sufficiently plead a claim for prejudgment interest.  Under Oregon law,

---

[3] Although I decline to resolve this issue now, I note that PacifiCorp's argument that federal pleading standards apply has some support.  *See, e.g.*, *Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 172 (5th Cir. 2010) (holding that, while state law governs a party's substantive right to prejudgment interest, the pleadings do not need to contain a request for prejudgment interest under Federal Rule of Civil Procedure 54(c)); *Soderhamn Mach. Mfg. Co. v. Martin Bros. Container & Timber Prods. Corp.*, 415 F.2d 1058, 1064 (9th Cir. 1969) ("The right to recover prejudgment interest was not affected by [the plaintiff's] failure to demand interest in its federal pleadings."); *cf. Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1066 (C.D. Cal. 2009) ("[T]he fact that California courts may impose a heightened pleading requirement on claims for punitive damages is irrelevant, because such a requirement conflicts with federal procedural law.")

"[a] party seeking prejudgment interest 'must specifically plead a foundation for prejudgment interest. To do so, that party must (1) request prejudgment interest in the prayer and (2) plead facts sufficient to state a claim for prejudgment interest.'" *Davis v. F.W. Fin. Servs., Inc.*, No. 110404916, ___ P.3d ___, 2013 WL 6834954, at *11 (Or. Ct. App. Dec. 26, 2013) (quoting *Emmert v. No Problem Harry, Inc.*, 192 P.3d 844, 849 (Or. Ct. App. 2008)). "A party sufficiently states a claim for prejudgment interest where a party alleges, in the body of its complaint, 'the exact amount claimed to be due and the dates during which [the] plaintiff claimed it was deprived of the use of its money.'" *Id.* (alteration in original) (quoting *Holman Transfer Co. v. Pac. Nw. Bell Tel. Co.*, 599 P.2d 1115, 1126 (Or. 1979)).

In this case, PacifiCorp alleges in its proposed second amended complaint that, as a result of the outages, it "has been required to incur repair and remedial measures and related costs in excess of $3,300,000" and that it has suffered consequential damages "of approximately $4,000,000." PacifiCorp's Proposed Second Amended Complaint, #491-2, at 4. Absent from PacifiCorp's proposed amended complaint is any mention of "the dates during which . . . it was deprived of the use of its money." *Davis*, 2013 WL 6834954, at *11 (citation omitted) (internal quotation mark omitted). As this case has progressed through discovery and a prior round of dispositive motions, it has become clear that there were four separate forced outages occurring in January 2007, July 2007, August 2007, and September 2007.[4] PacifiCorp's proposed amended complaint, however, does not identify the dates of the outages or attempt to give any estimate as to what damages are attributable to which outages. Thus, I cannot conclude that PacifiCorp has

---

[4] I note that, as a result of the July 16, 2012 opinion and order, only the January 2007 and July 2007 outages are still at issue.

sufficiently pleaded a claim for prejudgment interest under Oregon law and, thus, if Oregon law applies, PacifiCorp's proposed amendment is futile.

In light of the foregoing, I deny PacifiCorp's motion for leave to amend its complaint to add a claim for prejudgment interest. I emphasize, however, that I make no finding at this time as to whether PacifiCorp must plead a claim for prejudgment interest and whether PacifiCorp is entitled to prejudgment interest. Should this case proceed to trial, I will address any arguments relating to these issues at the pretrial conference.

## CONCLUSION

For the reasons discussed above, GTN's second motion for summary judgment (#478) and PacifiCorp's motion for leave to file an amended complaint (#489) are denied.

Dated this 14th day of January, 2014.

Honorable Paul Papak
United States Magistrate Judge

Page 24 - OPINION AND ORDER